THE UNION NATIONAL BANK OF CHICAGO

*v.*

THE STATE NATIONAL BANK OF ST. JOSEPH *et al.*

*Opinion filed November 1, 1897.*

1. DEBTOR AND CREDITOR—*a creditor may protect himself by bona fide transactions.* A creditor may in good faith pursue his legal remedies against his debtor, and if he thus obtains priority, either by suit or by the voluntary act of his debtor, he may hold the advantage gained, though the claims of other creditors are thereby postponed or even defeated.

2. FRAUD—*to render a preference fraudulent both parties must concur in the intent.* An insolvent debtor may prefer one creditor to another, and his motives in so doing cannot be questioned, provided the creditor has acted in good faith.

3. SAME—*fraud must be proven like any other fact.*  Fraud will not be presumed, but must be proved by the party alleging it by clear and convincing evidence in order to justify the setting aside of deeds or mortgages.  A mere suspicion of fraud is not sufficient.

4. MORTGAGES—*mortgage given to secure creditor held not fraudulent.* A mortgage given to a bank to secure a pre-existing indebtedness from, and future advances by it to, the debtor to enable him to continue business, is held, after a full consideration of the evidence in this case, not to be fraudulent as against other creditors.

*Union Nat. Bank* v. *State Nat. Bank,* 68 Ill. App. 43, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

GREEN, ROBBINS & HONORE, for appellant:

A transfer of property must not only be upon a good consideration, but it must also be *bona fide.*  Even though the grantee or assignee pays a valuable, adequate and full consideration, yet if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. *Beidler* v. *Crane,* 135 Ill. 92.

A mortgage given to secure a debt is void if given with an intent, shared by the grantee, to disturb, hinder and delay other creditors.   *Reed* v. *Noxon,* 48 Ill. 323; *Bell* v. *Prewitt,* 62 id. 361; *Strohm* v. *Hayes,* 70 id. 41; *Weber* v. *Mick,* 131 id. 520; *Hansen* v. *Dennison,* 7 Ill. App. 73; *Johnson* v. *Huber,* 34 id. 527; *Thorne* v. *Crawford,* 17 id. 396; *Ley* v. *Reitz,* 25 id. 615; *Herkelrath* v. *Stookey,* 63 Ill. 486; *Beidler* v. *Crane,* 135 id. 92; *Mitchell* v. *Sawyer,* 115 id. 650.

While the law permits an insolvent debtor to make choice of the persons he will pay, it denies him the right in doing it to contrive that other creditors shall never be paid, or to use the debt of the preferred creditor as a col-

orable consideration to screen and protect his property from their claims, or to delay, hinder and embarrass them in the enforcement of their demands.    Bump on Fraud. Con. (4th ed.) 172.

When a creditor accepts a preference for the purpose of aiding his debtor to hinder and delay the other creditors, as well as for the purpose of obtaining security for himself, the act of preference will be regarded as fraudulent and void.    *Young* v. *Clapp*, 147 Ill. 176; *Huiskamp* v. *Wagon Co.* 121 U. S. 310; *Merry* v. *Bostwick*, 13 Ill. 398; *Vernon* v. *Morton*, 38 Ky. 247; *Strohm* v. *Hayes*, 70 Ill. 41; *Beidler* v. *Crane*, 135 id. 92; *Hafner* v. *Irwin*, 23 N. C. 490.

If the object in making the mortgage was to hinder or delay creditors the instrument is not purged, because the grantor may also have had some other purpose in view. *Reed* v. *Noxon*, 48 Ill. 323.

If the intention in executing the deed be to hinder and delay creditors it will vitiate the whole deed, though it be made upon a good consideration or for the just and equitable purpose of securing an equal distribution of the effects among all creditors.    *Gardner* v. *Bank*, 95 Ill. 307.

PADDOCK, WRIGHT & BILLINGS, for appellees:

That a mortgagor intends, by giving a mortgage to a certain creditor, to hinder and delay his other creditors, or that he intends, by conveying his property by absolute deed, to hinder and delay his creditors, is not sufficient to render the mortgage or the deed invalid.    To render the mortgage or the deed invalid it is necessary that the mortgagee or the grantee participates in the fraudulent intent.    *Griffin* v. *Marquardt*, 21 N. Y. 121; *Zick* v. *Guebert*, 142 Ill. 154; *Huiskamp* v. *Wagon Co.* 121 U. S. 310; *Gridley* v. *Bingham*, 51 Ill. 153; *Hesing* v. *McCloskey*, 37 id. 341; *Herkelrath* v. *Stookey*, 63 id. 486; *Spicer* v. *Robinson*, 73 id. 519; *Jones* v. *Simpson*, 116 U. S. 610; *Prewett* v. *Wilson*, 103 id. 22; *Grant* v. *Bennett*, 96 Ill. 513; *Schroeder* v. *Walsh*, 120 id. 403; *Hatch* v. *Jordan*, 74 id. 414.

To establish that a preference is a fraud against creditors the evidence of fraud must be clear and convincing. *Pratt* v. *Pratt*, 96 Ill. 184; *Bowden* v. *Bowden*, 75 id. 143; *Blow* v. *Gage*, 44 id. 208.

The common law right of an insolvent debtor to prefer in good faith a particular creditor, even if the effect is to delay other creditors, is firmly established in this State. *Morris* v. *Tillson*, 80 Ill. 81; *Schroeder* v. *Walsh*, 120 id. 403; *Francis* v. *Rankin*, 84 id. 169; *Wood* v. *Clark*, 121 id. 359.

The only restriction upon this right is the statute governing voluntary assignments, which is not invoked here and does not, even remotely, apply to this case. *Cary* v. *McKey*, 40 Fed. Rep. 858.

To render the preference invalid there must be fraud, and fraud upon the part of both the debtor and the preferred creditor. The preferred creditor must participate in the fraud. *Huiskamp* v. *Wagon Co.* 121 U. S. 310; *Hatch* v. *Jordan*, 74 Ill. 414; *Schroeder* v. *Walsh*, 120 id. 403; *Gridley* v. *Bingham*, 51 id. 153; *Hine* v. *Bowe*, 114 N. Y. 350; *Grant* v. *Bennett*, 96 Ill. 513; *Jones* v. *Simpson*, 116 U. S. 610.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill brought by the State National Bank of St. Joseph, Mo., to foreclose a mortgage bearing date February 16, 1895, executed by John Moran and Kate Moran, his wife, on certain real estate in Chicago. In addition to Moran and wife, the defendants in the bill were the St. Joseph Stock Yards and Terminal Company, a subsequent mortgagee, and the Union National Bank of Chicago, a subsequent attaching creditor. The circuit court decreed the foreclosure of the mortgage as a first lien upon the premises in question. From that decree the Union National Bank appealed to the Appellate Court for the First District. The latter court affirmed the decree of the circuit court. From the order and judgment of the Appellate Court the Union National Bank then appealed to this court.

There is no dispute as to the priority of the mortgage in point of time, and the only question presented by the record in the Appellate Court or involved in the trial in the circuit court was whether or not the mortgage to the State National Bank was a valid preference, or was it fraudulent as against creditors. Both courts found that there was no fraud in the transaction, and upheld the preference as valid.

The facts which led to the execution of the mortgage in question may be briefly stated. In the month of June, 1894, John Moran purchased a certain packing house at St. Joseph, Mo., from the St. Joseph Stock Yards and Terminal Company, and made a contract to slaughter hogs enough so that the yardage fees to the stock yards company would amount to $20,000 per year, or if they did not amount to that much, then to pay the deficiency in cash. In carrying on this packing business Moran borrowed, from time to time, large sums of money from the State National Bank. In October, 1894, Moran concluded to organize the John Moran Packing Company under the laws of Illinois. Upon the complete organization of the packing company he conveyed the above described premises and packing plant at St. Joseph, and his entire business, bills and accounts receivable, teams, etc., and good will of the business there, and his equity in certain Chicago real estate, to the John Moran Packing Company for the sum of $150,000. In payment he received 1139 shares out of a total of 1500 shares of the capital stock of the company, at a valuation of $113,900, and due bills of the company for the remaining $36,100, and the company assumed all his liabilities pertaining to his said packing business. Among the liabilities were a debt of $50,000 to the State National Bank and the contract of June 25, 1895, between said Moran and the stock yards company. On November 8, 1894, the $50,000 debt to the State National Bank became due, but the indebtedness was renewed, two new notes being given for $25,000 each,

due in three and four months, executed by the John Moran
Packing Company and endorsed before delivery by John
Moran.   In January following, the packing company en-
tered into a contract in writing with one C. M. France,
under which he leased a portion of the premises for cold
storage warehouse purposes.   France was to act as ware-
houseman and issue warehouse receipts for goods stored.
The warehouse receipts issued under this agreement were
put up by the packing company with the State National
Bank for loans, and about the middle of February, 1895,
the packing company owed that bank the two notes of
$25,000 each, and in addition some $40,000.   One of the
notes executed on November 8, 1895, for $25,000 was then
due, and as the indebtedness of Moran and the packing
company was then so large the State National Bank in-
sisted on security for the amount of the indebtedness due
to it.   The result was, that on February 16, 1895, Moran
and wife executed a mortgage dated that day, securing
the two $25,000 notes of November 8, 1894, and covering
real estate owned by Moran in Cook county, Illinois.
This mortgage is the one sought to be foreclosed by the
State National Bank in this suit.   Two days thereafter,
—that is, on February 18, 1895,—the John Moran Pack-
ing Company executed a mortgage dated that day, to
secure the same notes, covering its equity of redemption
in certain Chicago real estate acquired by it from Moran
at the time of the organization of the company.   On the
same date it also executed a trust deed or mortgage se-
curing the same notes and covering the premises and
packing plant at St. Joseph.   At the time of executing
the above mortgages Moran and the packing company
also executed mortgages covering the same premises to
the St. Joseph Stock Yards and Terminal Company to
secure the performance of the contract of June 25, 1894,
before mentioned, between Moran and said Stock Yards
and Terminal Company.

The only question involved in this case is whether the mortgage to the State National Bank was a valid preference, or whether it was fraudulent and void as to other creditors of John Moran.

It appears that the mortgage sought to be foreclosed was given by John Moran and wife to the State National Bank of St. Joseph, Mo., on February 16, 1895, to secure the two notes of $25,000 each, dated November 8, 1894. Some months thereafter credits of principal and interest were made on the notes, which made the balance due at the date of the decree $36,009.16. There is no question but that the amount of the notes was due the State National Bank, and that the mortgage was given to secure a *bona fide* indebtedness, and not to cover up or protect John Moran. It further appears that the John Moran Packing Company was practically insolvent, and that the bank desired security for the indebtedness due from Moran and the packing company. As an inducement to get the packing company and Moran to give the mortgage security, the bank promised Moran to advance sufficient money upon warehouse receipts to enable the packing company to carry on its business until the summer of 1895. Moran in his testimony says that he (Moran) told them that he thought there would be money in the packing business that year, and that he could get on his feet and pay all his creditors; that he had enough property, if it was taken care of, to pay all. He says he made the mortgage on this property at the instance of Donovan, McShane, C. B. France, the president of the State National Bank, and Brown, the bank's attorney; that Donovan was only a go-between between the bank and him; that Donovan said if he would give a mortgage on all his property it would enable the packing company to run and help him to get out of debt, and by so doing "keep the bank from jumping on him." It does not impress us, as contended by the appellant, that the intention was to hinder, delay or defraud other creditors of Moran. The

language used is rather that of argument to induce Moran to give the mortgage security to the State National Bank —to prefer their indebtedness.   If the bank was secured they offered to advance more money to Moran, who was desirous of carrying on the packing business, and to do so some one must advance large sums of money.   The bank imposed certain conditions upon which they would advance the money.   The mortgage was executed February 16, 1895, and the secretary of the company swears that the packing company at that time had no money of its own with which to buy live stock; that after that date the packing company cut up no hogs of its own.   All live stock,—*i. e.*, hogs,—was bought after February 18, 1895, by C. B. France, president of the State National Bank, and paid for by him.   The stock was slaughtered by the packing company and placed in that portion of the premises leased to Charles M. France as a warehouseman. This warehouseman, employed by the packing company, then issued warehouse receipts to the order of the packing company, and the State National Bank made additional advances upon these warehouse receipts.   In this manner, and under the arrangement made when the mortgage was executed, the bank advanced, from time to time, $100,000 in addition to the indebtedness secured by the mortgages.   The packing company ran the business in this way until early in August, 1895, when Moran swears "he could not make any money and he quit."

A careful review of this testimony of Moran fails to satisfy us that this mortgage was given with a fraudulent intent to hinder and delay creditors.   The law is well settled that a vigilant creditor is entitled to all legal advantages, and can protect himself by a *bona fide* transaction.   Here was a large indebtedness due the State National Bank, and it was proper and legal for the bank to secure itself by taking the mortgage for the actual amount of the indebtedness due.   There is no evidence of a secret trust for Moran's benefit, neither was the time

of payment postponed unreasonably. The bank did not seek priority for the purpose of delaying or defeating other creditors, but the sole purpose appears to have been to secure an actual indebtedness due from Moran and the packing company. A creditor has unquestionably the right to pursue his legal remedies against his debtor so long as he does so in good faith, and if he thus succeeds in obtaining priority, either by suit *or by the voluntary act of his debtor*, he is entitled to hold the advantage gained, even though the result may be to postpone or even defeat other creditors. *Weber* v. *Mick*, 131 Ill. 520.

This court has long adhered to the doctrine that even an insolvent creditor may prefer one creditor to another, and that his motives for so doing, provided the preferred creditor has done nothing improper, cannot be inquired into. To render a preference fraudulent, both parties must concur in the intent to commit the wrong. In *Blair* v. *Illinois Steel Co.* 159 Ill. 350, this court said (p. 368): "The right to prefer a creditor rests upon the principle that so long as the debtor retains control and dominion over his property he may do with it as he sees fit, and discharge one obligation to the exclusion of another, presumably upon the theory that he regards the claim of one debtor more meritorious than another."

A mortgage is a mere security for a debt, the equity of redemption remaining in the mortgagor. If there is an excess over and above this mortgage, the other creditors of Moran can proceed against the mortgagor's equity.

Applying in this case the well settled rule as held by this court, that in order to impeach a conveyance for fraud both vendor and vendee must be shown to have intended to commit the fraud before the deed can be avoided, we find no evidence satisfactory to us that the State National Bank, in securing the mortgage, intended to commit a fraud to hinder and delay the other creditors of Moran. Fraud will not be presumed, but must be proven like any other fact; and it must be proved by

clear and convincing evidence, and the burden is upon the party alleging fraud. (*Huiskamp* v. *Moline Wagon Co.* 121 U. S. 310; *Hatch* v. *Jordan*, 74 Ill. 414; *O'Neal* v. *Boone*, 82 id. 589; *Schroeder* v. *Walsh*, 120 id. 403.)   The only witness who seeks to throw suspicion on the transaction is Moran, whose own testimony shows he was not an impartial witness.   When asked if he had not expressed himself as late as the latter part of 1895 that he would do all he could against the bank to defeat it in these suits, he answered: "Yes, I did.   I said it was nothing but just and right, when the State National Bank wanted to hog the whole thing, that I would come up and help the banks here in Chicago to get part of their money."

The notes and mortgage being fair on their face and for a *bona fide* indebtedness, the presumption is they are valid and binding, until that presumption is overcome by satisfactory proof.   A mere suspicion of fraud is not sufficient, but if it exists it must be satisfactorily shown. The law designs that solemn written instruments, such as deeds and mortgages, shall not be set aside on slight evidence.   The language used in *Pratt* v. *Pratt*, 96 Ill. 184, is applicable in this case (p. 200): "The law designs that such instruments shall stand until overcome by evidence that convinces the understanding that they have been entered into for a purpose that is prohibited by the law. Whilst courts are vigilant in relieving against fraud, they are careful to protect fair and honest transactions."

The attachment proceedings of the Union National Bank of Chicago not having been commenced and the writ levied until nearly ten months after the recording of the mortgage of John Moran and wife to the State National Bank, the State National Bank acquired a first or prior lien.

Not finding the mortgage was executed for the purpose of hindering, delaying and defrauding creditors of John Moran, the decree of the Appellate Court will be affirmed.

*Decree affirmed.*