## James A. Edwards et al. v. Allan C. Story.

1. FRAUD—*Is Never Presumed.*—Fraud is never to be presumed, but must be affirmatively proved by the parties alleging the same. Such proof must be clear and satisfactory, and must be superior to that adduced to controvert it.

2. SAME—*What is Necessary to Impeach a Conveyance.*—To impeach a conveyance for fraud, both vendor and vendee must be shown to have intended to commit fraud.

**Attachment and Garnishment.**—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 16, 1903.

The facts of these two cases are presented in the following statement:

James A. Edwards instituted a garnishment proceeding in the Superior Court for the purpose of collecting an alleged judgment against George B. Johnson, a member of the board of trade, for the sum of $916.22 and costs. He summoned as garnishee, Albert B. Booth, a broker and member of the board of trade. The writ was served on Booth March 20, 1900. March 26, 1900, appellee, Allan C. Story, brought a suit in attachment in the Circuit Court against DuRuyter and summoned as garnishee said Booth. The writ in the attachment proceeding was served March 26, 1900. The funds sought to be reached by the attachment suit and the garnishment proceedings are the same, and consist of the proceeds arising from the sale of Johnson's membership in the board of trade to said DuRuyter. In November, 1900, Edwards was served with summons

issued in the attachment suit directed against himself and
Johnson, impleaded with DuRuyter.  On November 19,
1900, Edwards, in the attachment suit, filed an intervening
petition setting up the recovery of the judgment against
Johnson, the issuance and return of execution thereon, and
the record of the garnishment proceedings, and asserting a
prior lien and right to the money in controversy.   To this
petition Story filed a general traverse.

The two proceedings were heard and tried as one cause;
a jury was waived and issues submitted to the court.   A
finding and judgment were entered in favor of Story, plaint-
iff in the attachment, and against the defendant DuRuyter,
and garnishee, Booth, for $1,448, and against Edwards for
costs, and an order entered dismissing the intervening peti-
tion, from which judgment appellants have prosecuted a
separate appeal.

HENRY S. ROBBINS, E. R. BLISS and GEORGE GILLETTE,
attorneys for appellants.

FRANCIS C. RUSSELL and FRED W. STORY, attorneys for
appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

It is contended in behalf of appellant Edwards, that the
evidence strongly tends to prove actual fraud in the trans-
action between Story and Johnson, but regardless of that
contention it is insisted by said appellant that the transac-
tion in question was a constructive fraud, or a fraud in law
as against the claims of existing creditors, and by reason
thereof he, Edwards, is entitled to the proceeds arising
from the sale of Johnson's membership in the board of
trade.

With care we have examined the evidence in this case,
and while it is conflicting, we are of the opinion that the
finding of the court is justified from the facts in evidence.
It appears that the relations of attorney and client had,
prior to the transaction in question, existed between Story
and Johnson, and that Johnson owed Story for past serv-

ices; that Johnson owned and held in his own name a membership in the board of trade of Chicago; that some time in 1899 he became financially embarrassed and was unable to pay his assessment as member of the board of trade, and was in danger of losing his membership therein; that on or about the second day of January, 1900, Story advanced him $96; that Johnson stated to Story that he desired to dispose of his said membership. Story answered that he would buy it, provided his claim for attorney's fees was allowed. Johnson testified as follows:

" Story claimed that I was owing him $300 for services rendered in two cases, and we finally agreed that we would call the amount $275, and then I transferred to him the membership, and I had an understanding with him on that day, that in case my membership was sold I was to get $650 net; it was upon the basis of $950 for the membership, and $650 was the amount that Story was to pay me, and he was to furnish the bond necessary before a transfer on the books of the board of trade, and I was to have the money as I wanted it."

At the request of Story, Johnson agreed to assist in reselling the membership. Johnson called upon a broker, said Booth, and offered the said certificate of membership, and then told Booth that he was acting in behalf of Story, and Story testifies that Booth told him that Johnson had likewise told him that Story was the owner of the said certificate. A written transfer of the certificate of membership was made on the eighth day of January, 1900. Story, much of the time thereafter, and prior to March 20th, was physically unable to be present at his office, and told his son to pay Johnson from time to time as he might call for the money, so that when the various sums advanced prior to March 20th to Johnson, were aggregated, it was found that they more than paid Johnson the price agreed upon for the membership.

The broker, Booth, in several interviews with Story, personally and over the telephone, finally reported that he had found a purchaser, and several weeks were spent by Story in negotiating with surety companies for the bond required for the transfer to Booth's purchaser. On the 20th of

March the broker sent for Story to go to the board of trade to effect a transfer of the certificate of membership to the purchaser, said DuRuyter, and on this day, at the office of the secretary of the board of trade, met Story, Booth, Johnson and DuRuyter. Story was not familiar with, but was told what were the formalities that were necessary to effect a legal and formal transfer of a membership in the board of trade. The necessary signature was placed upon the book kept by the secretary of the board of trade and a transfer of the certificate of membership on the books was then made and DuRuyter became and has since remained a member. Story then and there asked for the pay for the certificate of membership from Booth, the broker, and from DuRuyter. Story testified :

"I told Booth I wanted a certified check; he said he would probably get me the currency. I asked for the money and when I found they had got the start of me I went to the officers of the board and protested; think I sent them a written protest. The day before this membership was transferred I demanded the money of Mr. Booth and demanded it of him on the morning and the afternoon of that day. I objected to the transfer of that certificate, until I got my money. I demanded my money before and after the membership was transferred. After I got this assignment I notified the board."

It appears that after these formalities of assignment had been made, that Booth pretended to send a messenger to his office to get the currency, but before the messenger returned, Booth was served with a garnishee summons in the said garnishment case of Edwards. Story testified that he knew nothing about the alleged judgment in the Edwards case before the serving of summons in the said garnishment suit. Booth states that the secretary of the board of trade directed him not to transfer the membership except in the presence of Story. So soon as the transfer of the membership had been made, and while they were waiting for the messenger to come with the cash amount, a deputy sheriff served Story with a writ in the Edwards garnishment proceedings. Booth testified on cross-examination that he had promised Story a certified check. In the answer of Booth,

Edwards v. Story.

garnishee, to certain interrogatories, he denies that he is or was in any manner indebted to said Johnson or that he has or ever had in his possession any moneys, choses in action, credits and effects owned by or due said Johnson.

It was certainly a very peculiar coincidence that Story and a deputy sheriff should meet late in the afternoon at the office of the secretary of the board of trade.    The conclusion can scarcely be resisted that the meeting was premeditated by certain parties, one of whom was not Story. Story was certainly led into the trap.

Appellants suggest that when Johnson would sell his membership, Story was to be paid the amount of his bill and the balance was to be turned over to Johnson, figuring upon the basis of $950.    If suspicion of this kind may be entertained, we, however, find no sufficient evidence upon which to base it.    Story is found in possession of a written assignment of the certificate executed long prior to the 20th day of March, 1900, and he has advanced all the money which Johnson says that he was to receive for his membership.

It is true Johnson's statement of the understanding between him and Story is somewhat confused, and that he does use the expression that Story was to pay him when the certificate was sold, but he also later explains this statement by saying that he, Johnson, was to receive his money as he wanted it; and he proceeded to want it before the actual transfer on the twentieth day of March.    So we are unable to accept appellants' proposition that Johnson was entitled to receive more than $950.

Again, there is not the slightest evidence that Story or Johnson was attempting to remove the membership or the proceeds of its sale out of the reach of creditors.

Fraud is never to be presumed, but must be affirmatively proved by the parties alleging the same.    Such proof must be clear and satisfactory and must be superior to that adduced to controvert it.    Schroeder v. Walsh, 120 Ill. 403; Brady v. Cole, 164 Ill. 116; Johnston v. Hirschberg, 185 Ill. 445.

Even if Johnson was not in good faith in making the sale, it is not shown that Story was guilty of fraud.

To impeach a conveyance for fraud, both vendor and vendee must be shown to have intended to commit fraud. Union National Bank v. State Bank, 168 Ill. 256.

From an inspection of the record, we are of the opinion that a *bona fide* sale and assignment of the membership in question was made by Johnson to Story on or about the eighth day of January, 1900, and that Story paid Johnson the full contract price therefor long prior to the twentieth day of March, 1900, the date of service upon Story of the summons in the garnishment proceedings. Counsel urge upon our attention that an assignment for the benefit of a particular creditor with a reservation of any benefit or advantage to the assignor is fraudulent as to the creditors of the assignor. Holding, as we do, there was no reservation of any benefit or advantage to Johnson in the assignment to Story, and that the assignment to Story was not intended simply as a pledge or security, we shall not further consider this portion of the argument.

It is claimed by appellee, Story, that there is not sufficient evidence to prove the existence of the alleged judgment in favor of the said Edwards or the proceedings thereunder, but it will be unnecessary for us to extend this opinion with a review of this part of appellants' case. The sale of the membership certificate was made by Story through Johnson to DuRuyter, and DuRuyter paid the money to Booth to be paid over at once to Story, the recognized owner and party who was entitled to the money, and it should have been paid him and not held to pay the debt of Johnson.

The judgment of the Circuit Court is affirmed.