Frank B. McKennan *et al.* Plaintiffs in Error, *vs.* E. R. Mickelberry *et al.* Defendants in Error.

*Opinion filed October 26, 1909.*

1. Fraud—*fraud will not be presumed.* Fraud will not be presumed but must be proved as a fact by such clear and convincing evidence as leaves the mind well satisfied that the allegations of fraud in the complainant's bill are true.

2. Same—*mere suspicion is not sufficient to establish fraud.* Something more than mere suspicion is required to prove allegations of fraud, and if the motives and designs of the parties charged with fraud and collusion can be traced to an honest and legitimate source as well as to a corrupt one, the former explanation ought to be preferred.

3. Same—*conclusion in favor of an honest motive should be adopted if weight of evidence is that way.* Fraud is never presumed when transactions may be fairly reconciled with honesty, and if the weight of the evidence is in favor of an honest motive that conclusion should always be adopted.

4. Same—*what does not justify decree granting relief against fraud.* A decree granting relief upon the ground of fraud and collusion with respect to a land trade is properly denied, where the most that can be said of the evidence is that a few facts are shown which, taken alone, might arouse suspicion.

5. Specific performance—*general rule as to decreeing specific performance.* A contract will not be specifically enforced unless the terms are clear, certain and unambiguous and admitted by the pleadings or proven with a reasonable degree of certainty, and even when such requirements are present, specific performance is not a matter of right but rests in the sound discretion of the court.

6. Same—*a party to a contract may waive defects in title.* A party to a contract to convey land to him may always waive defects in the vendor's title and insist upon specific performance of the contract if he desires.

7. Same—*inflexible rules for specific performance cannot be laid down.* Specific performance is an equitable remedy to compel such substantial performance as will do justice between the parties, and inflexible rules concerning the granting of relief can not be laid down.

8. Same—*specific performance not decreed as matter of course.* Specific performance is never decreed as a matter of course, but the inquiry in such proceedings must be whether in equity and

good conscience the court shall specifically enforce the contract, and this involves a hearing on the evidence.

9. APPEALS AND ERRORS—*what is not sufficient abstract of the evidence.* A decree cannot be reversed upon the· ground that it is not supported by the evidence, where it appears from the certificate of the clerk that he has only abstracted certain exhibits instead of setting them out in full in the certificate of evidence, and that such abstracts were made by counsel for plaintiffs in error.

10. SAME—*rule where certificate of evidence does not purport to contain all the evidence.* Where the certificate of evidence does not purport to contain all the evidence heard by the trial court it must be presumed that there was sufficient evidence to warrant and sustain the court's finding.

11. SAME—*when plaintiff in error must bring up all the evidence.* In order to entitle a plaintiff in error to insist the decree is not supported by the evidence he must bring up all the evidence.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

LOUIS FITZHENRY, and WELTY, STERLING & WHITMORE, for plaintiffs in error:

It is just as much the duty of courts of equity to decree specific performance of contracts for. the conveyance of land in proper cases as it is the duty of courts of law to award damages for breaches thereof. *McClure* v. *Otrich,* 118 Ill. 320; *Evans* v. *Gerry,* 174 id. 595; *Railroad Co.* v. *Brubaker,* 217 id. 462; *Fowler* v. *Fowler,* 204 id. 82.

A court of equity will mould its decree so as to fit the circumstances of each case, placing the parties in the same situation as if the contract had been performed according to its terms. *Smith* v. *Osborne,* 86 Ill. 606.

Courts of equity look upon things agreed to be done as actually performed. *Lombard* v. *Sinai Congregation,* 64 Ill. 477.

Equity may enforce the specific performance of a contract for the sale of land although the vendor has no title at the time of the sale, or even at the time of filing the bill, if he can make good title at the time of the decree. *Mason* v. *Caldwell,* 5 Gilm. 196; *Seyman* v. *Delancy,* 3 Cow. 445.

It is not necessary that the vendor possess a perfect title at the time the contract is entered into. It is sufficient if he make the contract in good faith and will be able to convey by the time a decree of specific performance is rendered. *Evans* v. *Gerry,* 174 Ill. 595; *Monson* v. *Stevens,* 56 id. 335.

The court will allow a reasonable time to perfect title. 22 Am. & Eng. Ency. of Law, p. 961, note 1.

A bill for specific performance of a contract, which also contains a prayer for general relief, is sufficient, where the evidence justifies it, to sustain a decree for the payment of money. *Cushman* v. *Bonfield,* 139 Ill. 219.

If specific performance is impossible the complainant may have relief in other form as to the substantial advantages of his contract. The court is bound to see that it does the complainant justice, which is the ground of its jurisdiction, and will mould its decree so as to fit the circumstances of each particular case. 20 Ency. of Pl. & Pr. 478; *Smith* v. *Osborne,* 86 Ill. 606.

A trustee cannot set up, as against his *cestui que trust,* an outstanding title to the trust property purchased by himself, where he was a trustee. *Cushman* v. *Bonfield,* 139 Ill. 219.

Admissions of parties are competent proof of collusion on their part. *Mack* v. *McIntosh,* 181 Ill. 633.

In the case of a contract for the sale or delivery of a personal chattel, it is well settled that the proper criterion by which to measure damages for the breach of contract is the value of the article at the time it should have been delivered and interest in the way of compensation for delay. *Smith* v. *Dunlap,* 12 Ill. 184.

The court should first find and declare the rights of the parties, and the rule to be adopted is to state the account by an interlocutory decree and then refer the cause to the master to take and settle the account. *Moffett* v. *Hanner,* 154 Ill. 649; *Ligare* v. *Peacock,* 109 id. 94.

Livingston & Bach, Sam C. Dooley, and Barry & Morrissey, for defendants in error:

It is the duty of the defeated party in a chancery case to bring up all the evidence that is preserved by a certificate of evidence before he can insist that the decree is not supported thereby. *Franklin Union* v. *People,* 220 Ill. 355; *Day* v. *Davis,* 213 id. 53; *Highley* v. *Deane,* 168 id. 266.

Evidence omitted from the transcript is presumed, on appeal, to be sufficient to sustain the judgment or decree. *Hill* v. *Hill,* 166 Ill. 54; *Deimel* v. *Parker,* 164 id. 627.

An abstract of the evidence is not sufficient. *Laundry Machine Co.* v. *Kelling,* 157 Ill. 495.

The failure of complainant in a bill for specific performance of a contract for the sale of land to show, by a clear preponderance of evidence, a performance of the contract on his part will prevent a decree in his favor. *Hatch* v. *Kizer,* 140 Ill. 583; *Brink* v. *Steadman,* 70 id. 241.

One cannot compel specific performance in equity unless he has performed all the acts which formed the consideration for defendant's undertaking. *Skeen* v. *Patterson,* 180 Ill. 289; *Cooper* v. *Tiler,* 46 id. 462.

If the contract is not certain, and it is not clear, from the evidence, that the exact terms were agreed upon and understood by the parties, it will not be specifically enforced. *Bowman* v. *Cunningham,* 78 Ill. 48.

To entitle a party to a decree for performance of an agreement it must be reasonable, fair and equitable. *Maltby* v. *Thews,* 171 Ill. 264.

The contract must be perfectly fair, equal and just, and such as a court of equity will commend, in order to justify a decree of specific performance. *Canal Comrs.* v. *Sanitary District,* 191 Ill. 326.

Where relief is claimed upon the score of fraud perpetrated upon the complainant, the allegation of the bill must be proved. Fraud is not to be presumed. *Curtis* v. *Humble,* 160 Ill. 193.

Fraud will not be presumed but must be proven like any other fact; and it must be proved by clear and convincing evidence, and the burden is upon the party alleging fraud. *Bank* v. *Bank,* 168 Ill. 264; *Sawyer* v. *Nelson,* 160 id. 629; *Brady* v. *Cole,* 164 id. 116.

Mr. Jᴜsᴛɪᴄᴇ Cᴀʀᴛᴇʀ delivered the opinion of the court:

This is a bill filed in the circuit court of McLean county by plaintiffs in error, seeking the specific performance of a contract and other relief. That court at a former term sustained a demurrer and dismissed the bill. The matter having then been brought here by writ of error, we reversed the finding of the lower court and remanded the case, with directions to overrule the demurrer. (*McKennan* v. *Mickelberry,* 228 Ill. 460.) Under the directions of this court the trial court thereupon re-docketed the cause, overruled the demurrer and referred the case to a master in chancery, who, after taking testimony, reported in favor of plaintiffs in error. Upon exceptions being filed to the report the court sustained a portion of them and overruled others and entered a decree dismissing the bill for want of equity. To review that decree this writ of error has been sued out.

The allegations of the bill were stated at some length in connection with the former decision, and we shall not attempt to set them out here.

It appears from the evidence in the record that defendant in error Ziemens is a man some sixty-six years old, who came to this country from Germany in 1861 and engaged in various lines of business, including that of lumber and coal, and also as a building contractor, with a considerable degree of financial success. Plaintiff in error McKennan is an attorney, and had acted in business deals in connection with Ziemens for some time before the events involved in this litigation took place. In 1902, on McKennan's advice, Ziemens entered into a real estate deal whereby they ac-

quired a 960-acre farm in Iroquois county, Illinois. The farm was encumbered for some $33,000. Ziemens contends that he advanced about $11,100 to be paid for the farm and that McKennan, personally, paid practically nothing; that thereafter he became surety for McKennan's indebtedness to the amount of over $6000, and that according to a statement signed by McKennan, made some time in 1905, the latter owed Ziemens $31,635. Counsel for McKennan claim that testimony showing some of these figures is not in evidence. It appears that it was offered before the master and he sustained objections to its introduction. We find no ruling of the trial court as to the admission or exclusion of this testimony, though it is found in the evidence reported by the master. We are disposed to hold that this evidence was admissible as the basis of the agreement that was thereafter sought to be entered into between Ziemens and McKennan.

In 1905 Ziemens, being dissatisfied with his business arrangements with McKennan, employed Mr. Welty, of the firm of Welty, Sterling & Whitmore, (who represent McKennan in this litigation,) and in the process of negotiation obtained from McKennan statements of account between Ziemens and McKennan which counsel for Ziemens offered in evidence before the master, but, as we have said, the master sustained an objection to their being received. On account of these negotiations between Welty and McKennan a contract was executed by McKennan and Ziemens May 15, 1905, stating that they owned said land in Iroquois county and that there was a certain indebtedness on it; that McKennan and wife should quit-claim to Ziemens all interest in said land and Ziemens should make a trust deed on said land to Welty, as trustee, to secure a loan for $10,000, and that this money should be used, as far as it would go, to pay off the partnership obligations of Ziemens and McKennan, including the ditch and general taxes, and that the balance should be used to pay so much as it would

of the individual indebtedness of McKennan for which Ziemens was surety; that the farm should be sold as soon as consistent with the best interests of both parties, and that from the proceeds of the sale all sums due to the respective parties on account of moneys advanced should be first paid and the balance divided equally between the parties, or that each should bear one-half of the deficit, if any; that McKennan should, within a few days after the execution of the contract, pay off a certain judgment against him which was a lien on said property. This contract was introduced by plaintiffs in error. The deed from McKennan and wife to Ziemens was executed as agreed. We do not consider it necessary for the decision of this case to decide whether or not the evidence as to the actual amount of McKennan's indebtedness to Ziemens at the time they entered into the foregoing contract was considered in evidence by the chancellor who heard this case. Said contract between Ziemens and McKennan of May 15, 1905, shows, beyond question, that McKennan was indebted for sums of money for which Ziemens was surety, and also that there was a judgment against McKennan which was a lien on the land and which he agreed to pay, and the evidence in this record proves that McKennan never paid the judgment in question before the beginning of this litigation, and that while the trust deed mentioned in said contract was executed, with Welty as trustee, the $10,000 planned to be secured thereby was never raised to pay off the indebtedness.

It further appears from the evidence that some time after the foregoing contract was executed, Reed & Welch, real estate agents in Bloomington, informed McKennan that they represented E. R. Mickelberry for the purpose of selling or trading a store building and stock of goods in Clinton, Illinois, and proposed a trade for the Iroquois county farm. Out of these negotiations a proposition was secured from Mickelberry by which the latter agreed to

trade for the farm, and finally the following contract was entered into between the parties:

"This agreement, made and entered into this 9th day of May, 1906, by and between E. R. Mickelberry, as party of the first part, and John Ziemens and Frank B. McKennan, as parties of the second part, all of the city of Bloomington, Illinois:

"*Witnesseth:* That said first party, for and in consideration hereinafter mentioned, has and does hereby sell, exchange and agree to convey, as hereinafter provided, to the said John Ziemens, lot 8, in block 11, in the original town (now city) of Clinton, DeWitt county, Illinois, * * * together with all the improvements and appurtenances thereunto belonging, and agree to furnish to and for the use of the said John Ziemens a complete abstract of the record title thereto, showing a good, clear fee simple title thereto except as to the encumbrance amounting to the total sum of $12,000, * * * together with interest thereon at the rate of five and one-half per cent per annum, and the taxes for the current year, with opportunity to said grantee to have the said abstract examined and passed upon, and to convey said premises to the said John Ziemens by a good and sufficient deed of warranty, duly signed and executed by all parties necessary to convey a good fee simple title thereto, subject only to the said current taxes and the said $12,000, together with interest thereon, * * * and to transfer all policies of insurance in force upon said premises to and for the use of said grantee, the possession thereof to take effect as of the 7th day of May, 1906, on the delivery of said deed; and further, and for the consideration aforesaid, that the said first party has and does hereby sell and agree to transfer, by a good and sufficient bill of sale, free and clear of all claims and encumbrances of kind whatsoever, except as hereinafter mentioned, to Lawson D. Welch, as trustee, for the said Frank B. McKennan's use, as provided in a certain contract between the said Frank

B. McKennan and the said John Ziemens of even date here-
with, all of said first party's merchandise and stock in trade,
which includes the horse, harness and delivery wagons, iron
safes, desks, cash register, scales and all articles of personal
property belonging to or used in connection with his said
business carried on in said building and not included in the
said conveyance of real estate, and which formed a part
of said stock of goods and merchandise on the 7th day of
May, 1906, and to transfer all policies of insurance there-
on.  *  *  *

"Said second parties, in consideration of the foregoing,
have and do hereby sell, exchange and agree to convey, by
a good and sufficient deed of warranty duly signed and ac-
knowledged by all parties necessary to convey title thereto
in fee simple to said first party, the west half of section 25
and all of section 26, in township 29, north, range 11, west
of the second principal meridian, in Iroquois county, Illi-
nois, subject to the taxes for the current year and subject
to two trust deeds, one for the sum of $33,000, together
with interest thereon at the rate of five per cent per annum
from and after the said 7th day of May, 1906, the other
for the sum of $1650, without interest until after due, with
the sum of $330 paid, leaving a balance of $1320 yet due,
without interest until after due;  *  *  *  any and all re-
maining assessments on account of making of the dredge
ditch through the said lands, which were a lien thereon on
the 7th day of May, 1906, to be accounted for and paid to
the order of said first party on or before the first day of
January in each year as they become due and payable.  All
policies of insurance remaining in force upon the improve-
ments to be duly transferred to said first party, and exist-
ing leases and all of second parties' rights under all leases
with tenants to be transferred to and vest in said first party,
said first party taking said premises subject to the rights
of all tenants in possession.  Said second parties to furnish
to and for the use of said first party a complete abstract

of the record title to said lands showing a good, clear fee simple title thereto, with opportunity to have the same examined and passed upon. All deeds and papers necessary to the proper transfer of the said properties and premises to be executed within forty-eight hours of this date and delivered to the German-American Bank, to be held by it in escrow and delivered to the respective parties in interest as soon as the titles are shown to be satisfactory, as provided herein, and first party shall be established in possession of said lands as of the year 1906 and said second parties and the said trustee as of the said seventh day of May, 1906."—Signed by the parties.

There is some contradiction in the testimony as to just how Ziemens was induced or came to sign this contract. All the testimony is to the effect that before signing he went with McKennan to see James S. Neville, who was then cashier of the German-American Bank at Bloomington, to see if the bank would advance money to pay off certain obligations which were then a lien on the Iroquois county farm, and which it is conceded by all the parties amounted to at least $5200, in addition to the $34,320 which Mickelberry was to assume. Ziemens testified that they never came to any definite understanding with Neville, while McKennan insists that Neville told them he would take care of the $5200 indebtedness; that for this reason the agreement provided that all the papers should be deposited in escrow with said bank. Before the evidence was taken in this case cashier Neville died.

Prior to making the contract with Mickelberry there had evidently been some discussion between McKennan and Ziemens as to an agreement between them stating their mutual account. The agreement of May 9, 1906, speaks of "a certain contract between the said McKennan and Ziemens of even date herewith." In our former opinion we stated that it was not entirely clear that the contract between Ziemens and McKennan was to be in writing. There

can be no question from the evidence in this record that such contract was to be in writing and executed before the papers were delivered by the German-American Bank. It was for the purpose of carrying out said written contract to be entered into between said Ziemens and McKennan that said contract of May 9, 1906, provided that the stock of goods in the store at Clinton should be held by Lawson D. Welch as trustee. The bill of sale of said stock of goods to Lawson D. Welch, which was executed by Mickelberry on May 9 and deposited with the other papers in the German-American Bank, specifically states that it was executed "for the objects and purposes set forth in a certain writing of even date herewith, executed between said Frank B. Mc-Kennan and one John Ziemens." Indeed, it is now conceded on this record that it was the understanding of all the parties that the contract between Ziemens and McKennan should be executed at the same time with the other papers. McKennan claims that it was not drawn up at that time because cashier Neville suggested that they did not know just what the items of floating indebtedness were and might better wait until the definite amounts were ascertained. However, Ziemens, with his wife, signed the deed to the Iroquois county farm, and the deed and the contract with Mickelberry were placed in escrow with the German-American Bank.

Ziemens testified that the night after these papers were deposited in the bank he got to thinking over his business troubles, with the result that he slept very little, and early the next morning he went to the bank before business hours to see Mr. Neville. He first saw the president, Mr. Wochner, who told him Neville was out of the city. He then told Mr. Wochner that he was in great trouble and worrying over the business contract and deed which he had just executed. After discussing the matter somewhat, Mr. Wochner advised him to consult an attorney, and suggested that he go and see the bank's attorney, Mr. Will. Ziemens

stated that he did not think Mr. Will would take up the matter, because he had advised Ziemens, at the time he and McKennan purchased the Iroquois county farm, not to go into the deal. Mr. Wochner said he would see Will and advise him to take hold of Ziemens' matters. Ziemens testified that he then went to see attorney Will; that on his way he called at the office of defendant in error Mickelberry, but was told by Charles Mickelberry, a cousin, that Mickelberry was away from home; that he asked the cousin to tell Mickelberry that the deal would have to stop,—not to deliver any goods to McKennan until there was a written agreement between McKennan and Ziemens; that Charles Mickelberry said he would so telephone his cousin. E. R. Mickelberry appears to have been at this time in the store where the goods in question were located, and the testimony shows that Charles Mickelberry did telephone him at once what Ziemens had said. Ziemens went from Mickelberry's office to that of attorney Will and said he wanted to talk with him about his troubles. Will first refused to advise him, but finally, after hearing from Wochner, agreed to take the matter up, and from that time on Ziemens followed Will's advice. The testimony of Will, Wochner and Ziemens agrees as to what occurred at that time.

Attorney Will counseled Ziemens that it was not advisable to go on any further with the deal unless McKennan would execute a written contract fixing and settling the rights between them. The testimony of Will, Ziemens and McKennan does not fully agree as to what took place with reference to this contract. It is certain, however, that within a very few days after this McKennan knew that Will was advising Ziemens and wrote him several letters. We think there can be no question on this record but that McKennan saw Will and as a result of the talk drafted a contract to be executed by himself and Ziemens embodying his own views as to the settlement between them. McKennan signed this instrument and sent it to Ziemens, who turned

it over to Will. Will advised Ziemens not to sign the contract, as it did not conform to what Ziemens claimed to be the terms agreed upon. Will testified that McKennan came to see him, and he told McKennan as soon as he and Ziemens would agree on a settlement and put the contract in writing he would advise Ziemens to go ahead and carry out the trade with Mickelberry; that after the draft of the contract was prepared by McKennan he told McKennan that it did not conform to Ziemens' understanding as to the terms of settlement of their mutual accounts, and that McKennan replied Ziemens had to sign that contract or there would be none executed. McKennan denies, in part or in whole, these later conversations with Will, but, as we have said, the contemplated contract was never executed between McKennan and Ziemens. It may be noted that McKennan claimed and set out in his draft of the contract that the settlement was to be made on the basis that Ziemens was to have, as a result of the trade with Mickelberry, the real estate in Clinton, subject to $12,000 encumbrance, and that $3000 in cash was to be paid Ziemens from the proceeds of the sale of the stock of goods, while Ziemens claimed that he understood he was to have the real estate in Clinton free and clear of all encumbrance and $6000 in cash. There seems also to have been some dispute between Ziemens and McKennan as to the payment of some of the indebtedness which was then owed by McKennan for which Ziemens was security. McKennan, in a letter written to Ziemens about this time, stated, among other things, that he wanted to settle his affairs with Ziemens and carry through the trade with Mickelberry, but he would not have anything to do with Ziemens in the matter as long as he followed the advice of attorney Will.

Shortly after Will began advising Ziemens about these matters he found that some of the persons who had liens on the Iroquois county farm were pressing for payment; that Ziemens was in default as to the interest on the mort-

242—9

gage and that the mortgagee was insisting on the payment of the back interest and sent word to Ziemens that it must be paid on or before June 1. Will testified that as a result, in order to protect his client, he undertook to raise money by means of a trust deed on said Iroquois county farm, to pay off said indebtedness; that he did procure a loan of $7500, secured by a trust deed dated and recorded May 29, 1906, which ran in Will's favor; that the money thus secured was used to pay off the floating indebtedness, including the unpaid taxes, overdue interest, mechanics' liens, etc. When McKennan first learned of this trust deed is not clear from the evidence, but it is certain he knew of it the morning of May 29, before it was recorded, and was told by Will that there was such a trust deed. McKennan thereupon told Will that any debts of McKennan's paid in that way he would only get back by a lawsuit. McKennan, on hearing of this trust deed, took steps at once to have recorded in Iroquois county the agreement executed by Ziemens and himself on May 15, 1905, which it appears had not been recorded up to that time.

Counsel for plaintiffs in error insist that the evidence shows that from the time of the execution of the contract of May 9, 1906, down to the present, Mickelberry and Ziemens have been acting together to defeat McKennan's claims under said contract, and that Will has been the attorney for both Mickelberry and Ziemens. The three parties named absolutely denied this charge. Counsel for the plaintiffs in error do not claim that they have any direct evidence as to fraud and collusion on the part of these three men, but insist that the facts and circumstances on this record show that there was such collusion and fraud, or, as counsel put it in their brief, "it is only an act here and an echo there that indicates the workings of this most remarkable business transaction." It was because of the positive allegations in the bill of such collusion and fraud that in the former hearing, on demurrer, we held that if they were

proven McKennan was entitled to the relief asked. Does the evidence as it is disclosed on this record show such collusion or fraud?

After Mickelberry had heard, through his cousin, that Ziemens did not want him to go on with the trade or to turn the stock over to McKennan, he refused to complete the trade until Ziemens and McKennan came to some understanding, and on May 29 sent a notice to that effect, a copy of which is shown in the former decision on page 466. McKennan claims that this notice was drafted by attorney Will. Mickelberry and Will both deny this, and it seems to be conceded that the notice was written on a typewriter in another office than Will's. The two had offices on the same floor. Mickelberry claims that he himself prepared said notice. A day or two after it was served he met McKennan in the presence of the real estate agents, Reed and Welch, and those three testified that Mickelberry then admitted that he did not prepare the notice in question alone. Two of them testified that he practically admitted that he had drafted it in conjunction with Will. Mickelberry himself denies having made any such admissions.

The record discloses that about the time the contract with Mickelberry was made McKennan had the abstract of title brought down to date and left at the German-American Bank and that Ziemens took it away again, and that McKennan wrote Ziemens that if he did not take the abstract back, so that Mickelberry could have it for examination, he would have another abstract of the farm, which he still had in his possession, brought down to date at Ziemens' cost and turned over to Mickelberry. Ziemens never brought the abstract back and the other abstract was never turned over to Mickelberry, so that he has never had an abstract of the Iroquois county farm in accordance with said agreement of May 9, 1906. It appears that during one of their conversations Mickelberry told McKennan that he understood the trust deed in Will's favor for $7500 was a lien

on the land and that this would have to be taken care of before he could go on with the contract, while McKennan tried to convince him, by reading legal authorities, that it was not a lien as against Mickelberry's interests. Mickelberry then told McKennan that he was going to consult Mr. Welty, of the firm of Welty, Sterling & Whitmore, here representing plaintiffs in error. He testified that he did consult Welty shortly thereafter, who advised him that the trust deed was a lien and should be taken care of by McKennan before the trade was completed, and that he told this thereafter to McKennan. It must be assumed from this record that he did receive such advice from Welty, because no attempt is made to deny it. Reed and Welch also testified that Mickelberry told them, about this time, that he could go on with the trade or throw it, just as he wished. Welch testified that Mickelberry stated that attorney Will could so manipulate the business that he (Mickelberry) could get the farm for practically the amount of the liens and that therefore it would be foolish to pay more. Mickelberry denies making any of said statements. Welch also testified that shortly before this bill was filed he drove with Mickelberry one Sunday to the home of attorney Will and they talked about this trade. Mickelberry admitted that he went to see attorney Will, but stated that he went with his wife and baby to call, and that Welch was not with him and the visit had nothing to do with this trade. Plaintiffs in error also proved by Mickelberry that in the early part of June he gave Will a check for $1000. Mickelberry admitted this, but claimed that the $1000 had nothing to do with this trade; that he gave the check in exchange for a check of Will's of like amount, as the attorney came into his office one afternoon and asked him to "swap checks," as he had overdrawn his bank account. There is nothing in the record to indicate that this explanation of Mickelberry's was not the truth. Mickelberry also admitted that he had employed Will to examine one or two abstracts, but

that was the only law business Will had ever done for him. Reed and Welch, the real estate agents, testified that they had seen Ziemens in Mickelberry's office several times after the execution of the contract of May 9, 1906, and that Ziemens acted as if he did not want them to see him there. Ziemens stated that a few days after the execution of the contract of May 9, 1906, he called on Mickelberry at his office and asked him if he got the word from his cousin not to go on with the trade until there was a written agreement between himself and McKennan, and that Mickelberry told him he had received the word.

Plaintiffs in error also insist that this record tends to show fraud and collusion between Will, Mickelberry and Ziemens, because some months after the bill was filed the Iroquois county farm was sold by Ziemens and Mickelberry gave a quit-claim deed for it at that time, and because Mickelberry has sold his store and stock of goods in Clinton and Ziemens quit-claimed whatever interest he might have had therein. Ziemens' answer is, that the farm was so encumbered that it was necessary for him to sell in order to save himself, and Mickelberry's answer is that he had a good offer for his properties in Clinton and therefore sold them.

We have stated substantially all the facts and circumstances disclosed by the evidence that can have any bearing on the question as to whether Ziemens, Mickelberry and Will acted in collusion, especially previous to the filing of this bill, June 16, 1906. It is not at all strange that in this litigation the attorneys of Mickelberry and Ziemens should make common cause against McKennan, in view of the charges set forth in the bill. Beyond question, as disclosed by this record, all of the actions of Ziemens, Will and Mickelberry since the filing of the bill are entirely consistent with honesty of purpose, and are without any fraud or collusion, as those terms are understood in law, against McKennan's

interests.   Can the same thing fairly be said as to their actions previous to the filing of this bill?

It has been repeatedly laid down by this and other courts that fraud will not be presumed, but must be proved, like any other fact, by clear and convincing evidence. (*Union Nat. Bank* v. *State Nat. Bank,* 168 Ill. 256, and authorities cited.) Something more than mere suspicion is required to prove allegations of fraud. The evidence must be clear and cogent and must leave the mind well satisfied that the allegations are true. (*Shinn* v. *Shinn,* 91 Ill. 477.)   If the motives and designs of the parties charged with fraud or collusion may be traced to an honest and legitimate source equally as to a corrupt one, the former explanation ought to be preferred. (*McConnell* v. *Wilcox,* 1 Scam. 344.) Fraud is never presumed when transactions may be fairly reconciled with honesty, and if the weight of the evidence is in favor of an honest motive that conclusion should always be adopted. (*Mey* v. *Gulliman,* 105 Ill. 272; *Bowden* v. *Bowden,* 75 id. 143; see, also, *Sawyer* v. *Nelson,* 160 Ill. 629; *Brady* v. *Cole,* 164 id. 116.) The most that can be said, in our judgment, in favor of plaintiffs in error's charge of collusion and fraud on the part of defendants in error is, that there are some few facts which, if taken alone, might arouse suspicion, but they do not justify the conclusion contended for. Will and Mickelberry, it is true, had offices on the same floor and used the same telephone. Mickelberry, it appears, talked with Ziemens at various times and visited Will once at his home before these proceedings were instituted and employed him as his attorney in one or two small matters. But the proof also shows that McKennan and Mickelberry met frequently after the contract was entered into and before the bill was filed,— not only in McKennan's office, but apparently in Mickelberry's office,—and that McKennan and Will met frequently. It could scarcely be contended that these facts alone would prove these three were in conspiracy.

Even if it be conceded that the testimony of Reed and Welch as to the statements of Mickelberry that he could throw the trade or go ahead with it, as he saw fit, was admissible, does it show collusion or fraud? A party to a contract can always waive defects in the title and insist upon specific performance if he desires. Mickelberry, perhaps, could have compelled the trade to go on or have dropped it, as he saw fit. Furthermore, this testimony of Reed and Welch on this point does not seem to us consistent with the other facts in the case. They were interested witnesses. If the contract were carried out they would get a commission, otherwise not. The record shows that they brought suit to collect commissions of Ziemens and the jury decided against them, and on appeal the Appellate Court affirmed the judgment of the lower court. Mickelberry testified that he had always stated to McKennan, up to the time this bill was filed, that if he could get a clear title to the Iroquois county farm he was willing to go ahead with the trade, but he could not get such title until McKennan and Ziemens settled their business troubles. Reed and Welch admit that they heard this statement by Mickelberry to McKennan. It is manifest from this record that, no matter what the cause, Ziemens and McKennan could not agree on the written contract as to the settlement of their business affairs, and that this contract was a substantial part of said agreement of May 9, 1906. Another fact indicating that their differences were practically irreconcilable was admitted by plaintiff in error McKennan during the trial, when he stated that in a previous real estate transaction Ziemens had got the best of him to the extent of $9000 from an over-valuation of real estate, and that in this matter he expected to make Ziemens account for that amount.

Without charging anyone with dishonesty or unfair dealing, we think the conclusion is inevitable that on Ziemen's part, and on the part of Will, his attorney, there was

an honest disagreement with McKennan as to the settlement that should be made between Ziemens and McKennan preliminary to the carrying out of their contract with Mickelberry.  It is conclusively shown by this record that no abstract of title of the Iroquois county farm land was ever presented to Mickelberry for his examination, and that at the time McKennan was attempting to get him to consummate the trade there was a $7500 trust deed on the farm in addition to the encumbrance that Mickelberry had agreed to assume.  Unless the trust deed was placed on the farm through collusion on the part of Ziemens and Mickelberry, to defeat McKennan's claims under said contract of May 9, 1906, it is evident that Mickelberry could not be compelled to take the farm subject to that trust deed.  Will, Ziemens and Mickelberry positively testified, as we have said, that there was no collusion, of any kind or nature, between them at any time before or after instituting the proceedings in question.  Considering all the facts and circumstances as shown by the record, in our judgment their acts in connection with this transaction are fairly reconcilable with honesty of purpose.  Indeed, we think the great weight of the evidence tends strongly to that conclusion.

The record shows that after the demurrer was sustained the Iroquois county farm and the Clinton property were sold and conveyed to innocent third persons, not parties to this litigation.  These facts were disclosed by the answers that were filed after the case was reversed by this court and sent back for the taking of evidence.  The complainants, however, did not ask leave to amend their bill.  The original master's report recommended relief against Will, Ziemens and Mickelberry.  Plaintiffs in error objected to this finding of the master and insisted that there should only be an accounting against Mickelberry, and the master modified his findings in accordance with these objections and only recommended that Mickelberry account for the stock of goods in the store at Clinton.  This is apparently the only

relief that counsel for plaintiffs in error are asking in this court. It would certainly be most inequitable and unjust to compel Mickelberry to make an accounting for the stock of goods in the Clinton store, as is asked, without settling on an equitable basis the entire series of transactions between Ziemens and McKennan and the transactions of Ziemens and McKennan with Mickelberry. This court has held that the specific performance of a contract will not be enforced unless the terms are clear, certain and unambiguous, admitted by the pleadings or proven with a reasonable degree of certainty by the evidence, and that even where all these requirements are present, specific performance is not a matter of right but rests in the sound discretion of the court. (*Dreiske* v. *Eisendrath Co.* 214 Ill. 199; 3 Pomeroy's Eq. Jur.—3d ed.—sec. 1405; *Sugar* v. *Froehlich,* 229 Ill. 397.) Specific performance is an equitable remedy for the purpose of compelling such substantial performance of a contract as will do justice between the parties. Inflexible rules concerning the granting of it cannot be laid down by this court. (*Evans* v. *Gerry,* 174 Ill. 595.) In such proceedings the inquiry must be whether in equity and good conscience the court should specifically enforce the contract, and involves a hearing on the evidence. It is never decreed as a matter of course. *Espert* v. *Wilson,* 190 Ill. 629; *Canal Comrs.* v. *Sanitary District of Chicago,* 191 id. 326; *Sugar* v. *Froehlich, supra.*

There is another reason why the decree of the lower court should not be reversed. It appears by the certificate of the clerk in this case that he has only abstracted certain exhibits instead of setting them out in full in the certificate of evidence; that these abstracts of the exhibits were prepared by counsel for plaintiffs in error. Such an abstract of the evidence is not sufficient. (*Troy Laundry Machinery Co.* v. *Kelling,* 157 Ill. 495.) One of these two exhibits was an abstract of title to the 960 acres of the farm land in Iroquois county, and it is now contended by defend-

ants in error that this abstract ·did not show good title.
The certificate of evidence not purporting to contain all the
evidence heard by the trial court, it must be presumed that
there was sufficient evidence to warrant and sustain its find-
ing.   (*Kennard* v. *Curran,* 239 Ill. 122, and cases cited.)
It<sup></sup> was the duty of plaintiffs in error to bring up all the
evidence before they could insist that the decree was not
supported thereby.   *Day* v. *Davis,* 213 Ill. 53; *Highley* v.
*Deane,* 168 id. 266.

In view of the facts disclosed on this record it would
be most inequitable to grant the relief asked for by plain-
tiffs in error.   The circuit court rightly dismissed the bill
for want of equity.   The decree of that court will therefore
be affirmed.                                *Decree affirmed.*