### DU PONT RAYON CO. v. PALEY.
### No. 10445.

District Court, N. D. Illinois, E. D.
Aug. 2, 1933.

Follansbee, Shorey & Schupp, of Chicago, Ill., for plaintiff.

Jones Addington, Ames & Seibold, of Chicago, Ill., for defendant.

LINDLEY, District Judge.

## Opinion.

Plaintiff sues to recover from defendant patent No. 1,779,103, issued to him October 21, 1930, upon the ground that the invention therein described was developed while defendant was employed by plaintiff, under a contract which, it is urged, makes all such inventions the property of plaintiff. Defendant contends that the contract was obtained from him by fraud and that plaintiff is estopped to assert its rights thereunder, because of alleged rejection of this invention when tendered.

About October 1, 1924, defendant sought employment of plaintiff. After it had been agreed that he should be employed, he was advised by Mr. Bacon, engineer in charge of the experimental department, that it would be necessary for him to take a medical examination and sign an employment agreement. Each of these things, he did. The employment contract was a printed form prepared by plaintiff. Defendant testified that one Brown, one of the clerical employees of plaintiff, showed him the contract; that he read it over carefully, believed that he understood it, signed it, and asked for a copy. Brown delivered to him, as Brown said, a signed copy, as defendant said, an unsigned copy. No protest as to the provisions of the contract was made. No questions were asked. Plaintiff was a college graduate, a man of intelligence and experience, had been a patent solicitor, and was apparently thoroughly familiar with the subject-matter of inventions and the application and procuring of patents therefor.

Plaintiff thereupon went to work at $225 per month, which after ten months was increased to $250. He remained until March 31, 1926, when he resigned, voluntarily, after one of defendant's employees had vainly endeavored to secure a further increase in his salary. At the time of cessation of employment no conversation relating to the rights of the parties occurred.

During all of his employment defendant was engaged in the experimental engineering department, working upon various problems arising in plaintiff's business, connected with the washing and purification of rayon. Various express assignments of problems were referred to him and progress reports made by him. He conceived one invention which was assigned to the company and resulted in a patent.

In October, 1925, he submitted to Evans, one of his superiors, a report with drawings with regard to a method and apparatus for the purification of rayon fiber by the use of chemicals and water. These are substantially the same as appear in the patent 1,779,103, which defendant procured after his resignation. He admitted that the invention of the patent was included within the reports and drawings mentioned and states that he offered it to the company during his term of employment.

It is said that there was no express assignment of the particular problem involved in this patent to the defendant, but the evidence shows conclusively that he did in fact work upon it with the plaintiff's knowledge and tacit consent; that he reported thereon; that he received certain criticism from one of his superiors as to his suggestions, but that no one representing the company at any time forbade him to persist in his labors or to desist from work upon the particular problem, solution for which was embraced in his subsequent patent. The conduct of the parties,

therefore, shows without question that defendant was, while engaged in the experimental work for the plaintiff, allowed to expend his time, partially at least, upon the particular problem, solution for which appears in this patent, and that it was the tacit arrangement of the parties, at least, that he expend time thereon.

The contract of employment recited that defendant desired to enter the employment of plaintiff and to co-operate to such extent as might be possible in the improvement of the company's inventions. He agreed thereby that he would devote his entire time and best efforts during the period of his employment to such duties as might be assigned to him by said employer and that any and all improvements or inventions which he might conceive or make during the period of his employment relating or in any way appertaining to or connected with any matters that might become the subject of investigation, or in which the employer was interested, should be the sole and exclusive property of the employer, and that he would, whenever requested so to do, execute and assign same to plaintiff so that it would become the exclusive owner thereof. He further agreed not to divulge or disclose during his employment or subsequent thereto any secret information of the employer, whether obtained or developed by him, without written consent of the employer. The plaintiff agreed to bear all expense of all investigation and of procuring patents and to pay defendant his regular salary.

█ Such contracts are valid. Thus it was said in Solomons v. United States, 137 U. S. 342 at page 346, 11 S. Ct. 88, 89, 34 L. Ed. 667: "If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer." See, also, Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033. In Conway v. White, 292 F. 837, 842, the Circuit Court of Appeals, Second Circuit, used this language: "The agreement that any inventions and discoveries made by the defendant during his employment and which were capable of use in the business of the company should be regarded as acquired and held in a fiduciary capacity and solely for the benefit of the company was a valid obligation, and was made to safeguard the particular business in which the defendant was employed. The decision of this court in Chadeloid Chemical Co. v. H. B. Chalmers Co., 243 F. 606, 156 C. C. A. 304, is conclusive as to the validity of the agreement." Upon subsequent appeal the same court said in 9 F. (2d) 863, 866: "The contract in this case did not lack consideration, and its plain intent was the protection of the business in which the company was engaged. It was not an agreement to assign in gross the defendant's future labors as an inventor, but only the inventions and discoveries made during the term of his employment, and which in any way might affect the articles manufactured by the company, and which were used or capable of being used in the business. There was nothing in the agreement which was unreasonable, or which rendered it invalid or unconscionable."

So here, as part of the consideration for his employment, for the salary for which he was to receive, defendant sold to plaintiff the fruit of his inventive labors relating to his employer's business during the term of employment. Whether he was sufficiently remunerated, whether his work led to the development of valuable inventions, are questions wholly immaterial in view of the terms of the contract, voluntarily executed by him. There is a modern philosophy to the effect that earned income should be more liberally returned to the individual making it possible, but until such policy shall be reflected in legislation invalidating a contract of sale of inventive labor, this court is powerless to afford relief against situations which parties, mentally competent, have created for themselves.

But defendant asserts that the contract was obtained from him by fraud. In his first amended answer he alleged that it was deliberately and intentionally represented unto him that plaintiff maintained a bonus plan in which he would participate; that such representation was false and fraudulent, in that plaintiff never had had, and did not have then, any bonus plan. After issue was joined upon this pleading, depositions were taken proving conclusively that plaintiff had since 1923 maintained a bonus plan. Thereupon defendant filed his second amended answer, in which he abandoned the defense that there

was no bonus plan but pleaded that the contract had been obtained from him by fraud, in that the details of the bonus plan were kept secret; that it was not disclosed that he would have to stay with the company for seven years to become eligible for a bonus; and that such concealment and suppression of the facts amounted to fraud and deception.

■■ It is hornbook law that fraud will never be presumed but must be proved by clear and convincing evidence; that if the motives of parties charged with fraud can be traced to an honest and legitimate source, good faith rather than fraud is preferred. In other words, fraud will not be presumed when a transaction may be fairly reconciled with honesty. Mere suspicion is not sufficient, but the evidence must be clear and cogent and leave the mind well satisfied that the allegations are true. See McKennan v. Mickelberry, 242 Ill. 117, 89 N. E. 717; United States v. Mammoth Oil Co. (C. C. A.) 14 F. (2d) 705 at page 717.

Defendant says that he read the contract and believed he understood it. No conversation was had concerning the bonus plan. The contract informed him that the condition of such plan was not disclosed, yet he asked no questions concerning same. The contract advised him that he could participate in the benefit of the said bonus under and in compliance with the conditions thereof. He made no inquiry as to such conditions. He was under no compulsion to proceed to work in ignorance of the details of the bonus plan, yet he showed no such interest as would lead him to inquire as to just how it worked. The evidence discloses that there was a bona fide bonus plan in operation during all the years from 1923 on. Apparently the recipients were many and the awards liberal.

Defendant's termination of his contract with the company was entirely friendly in character. He did not then or at any other time make any claim for bonus allowances or inquiry concerning the same. When he told his superior that he expected to resign, the latter requested an opportunity to see if he could not procure an increase of salary. Defendant assented to this, but the appeal met with failure. Defendant thereupon left the employment of plaintiff and went to a new employer under what he considered more advantageous circumstances.

■ In view of the pleadings of the defendant, the court is driven to the conclusion that the claim of fraud in the alleged concealment of the bonus plan is a mere afterthought; that plaintiff did not willfully conceal the details of the bonus plan from defendant, but that the latter never requested information concerning the same, though his contract plainly advised him that any bonus participation would be under the plan and according to the conditions thereof. Had defendant insisted upon knowing the details of the plan before proceeding, had plaintiff refused to divulge the details thereof, a different situation might exist; but as he never made inquiry and voluntarily left the employment without inquiry, it is obvious that his defense of fraud in this respect is not well founded.

■ Defendant contends further that plaintiff is estopped to assert its claim to the patent on the ground that it rejected the invention therein covered when tendered. The facts with regard to this matter are not greatly disputed. Defendant tendered to Evans, one of his superiors, but no one possessing final authority, his plan, drawings, and report with regard to the subject-matter of the invention. Evans received and studied the same and he made in writing certain notations concerning what he deemed impractical features and returned to defendant his original drawings and Evans' criticisms. This was in October, 1925. Defendant says that about ten days later he again talked with Evans concerning this particular matter and that Evans persisted in his criticisms. No further talk occurred between the two. The company was primarily interested in the subject-matter, and defendant continued in the company's employment until the following March.

The court fails to find in the conduct of Evans, a subordinate officer with no final authority to pass upon the policy of the company with regard to inventions, anything which would create an estoppel against the company's claim of title to the patent. The fact that defendant was receiving his salary from the plaintiff, that he contracted that such inventions as he might make would belong to the plaintiff, that with the consent of his superior he devoted time and effort to the particular problem involved, and that he discussed it with Evans, would indicate clearly that the invention was within the terms of the contract and that plaintiff at no time did anything estopping itself from asserting its rights.

This court will not stamp with approval coercion of an employer upon an employee. There must be fairness and openness between the two in their contractual dealings. The laborer is worthy of his hire, but an educat-

294

ed employee must know the value of that hire. Defendant, a college graduate, an educated man, with patent soliciting experiences, sought employment and procured it upon a figure satisfactory to him. He has offered no satisfactory proof of any fraud or concealment upon the part of the plaintiff or of facts which would estop it to assert its rights under a valid contract.

■ There will be a decree in favor of the plaintiff as prayed and ordering an assignment of the patent to plaintiff upon payment by defendant to plaintiff of his expenses in procuring the patent.

The findings of fact and conclusions of law adopted by the court are incorporated herein by reference.