Theodore Wolf *et al.*

*v.*

Emil ·Dietzsch.

75　205
23a 594
75　205
141　662
75　205
57a 322
75　205
60a 360
75　205
75a 490
75　205
81a　98
75　205
184　411
75　205
89a ⁴462
75　205
90a ⁴343
75　205
h98a ¹ 22
75　205
d106a³582·

1. Sale — *seller must show he delivered according to order.* Where wine is ordered to be forwarded to the purchaser, the burden of proof, in an action for the price, is upon the seller to show that he complied with the order by delivering to the carrier the kind of wine ordered, for when an article is sold by a particular description, it is a condition precedent to the vendor's right of action that what he offers to deliver, or has delivered, shall answer this description.

2. Same — *subsequent damage, when the purchaser's loss.* Where a party in Chicago gives an order on a house in New York city for a particular kind of wine, of good quality, it is the duty of the seller to deliver to the carrier the wine ordered, using the usual and reasonable precautions to insure its prompt and safe delivery to the purchaser, and if he does so, the property will vest in the purchaser, and any subsequent injury it may sustain will be the loss of the latter.

3. Same — *rescission must be in toto.* The doctrine repeatedly announced by this court is, that a party cannot affirm a contract in part, and rescind it as to the residue. If he rescinds, he must do so *in toto.* He must put the opposite party in as good condition as he was before the sale, by a return of the property purchased, unless it is entirely worthless.

4. Same — *acts precluding a rescission.* Where a vendee has a right to object that goods delivered are different in quality from those he purchased, he must do so within a reasonable time, and before exercising acts of ownership over them. If, before objecting to their quality, he exercises any act of ownership over them, as, by selling a part, etc., he cannot afterwards repudiate the contract, so as to wholly defeat the vendor's claim for the price.

Appeal from the Circuit Court of Cook county; the Hon Henry Booth, Judge, presiding.

Mr. Ephraim Banning, for the appellants.

Mr. Arno Voss, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is assumpsit, by appellants against appellee, for certain wine claimed to have been sold and delivered by them to him.

Appellants were importers of and dealers in wines, doing business in New York; and appellee was, to some extent, engaged in selling wines in Chicago.

The wine in controversy was ordered by appellee, from a member of appellants' firm, and was shipped to and received by appellee in the latter part of June, 1871.

The order was for eighty-one gallons of Affenthaler red wine; the quality was to be good, and the price agreed upon was two dollars and fifty cents per gallon.

The defense set up is, that the wine received was not good, but was very sour and wholly unsalable, as wine.

Some twenty gallons of the wine were sold by appellee, and for the value of this the judgment was for appellants; but for the value of the residue, the judgment was against them, and it is to this part of the judgment that our attention is invited by this appeal.

It was the duty of appellants to deliver to the carrier the wine ordered by appellee, using the usual and reasonable precaution to ensure its prompt and safe delivery to him; and if they did so, and the wine was then good, the property vested in appellee, and any subsequent injury it may have sustained would be appellee's loss. *Diversy* v. *Kellogg,* 44 Ill. 118; Benj. on Sales, 515. The burden is on appellants to show that they complied with their contract by delivering to the carrier the wine ordered, for when an article is sold by a particular description, the authorities hold that it is a condition precedent to the vendor's right of action, that what he offers to deliver, or has delivered, shall answer this description. Have they done so?

Carl Wolf, one of the appellants, swears that he personally superintended the filling of the wine cask; knows perfectly well the condition of the wine at that time; knows that it was in a perfectly sound and good condition, and was of the exact kind

and quality ordered.    He says he examined and tasted the wine at the time ; saw his cooper close the cask securely, and address it to appellee at Chicago ; he then had it delivered to the railroad company for shipment, and took its receipt, showing that the wine was received in good condition.

Jacob Kreber, the wine-cooper, swears that he was employed by appellants in that capacity, and was acquainted with the wine in question ; it was German red-wine ; its quality was good, and in sound condition at the time of shipment ; and he corroborates Wolf as to putting the wine securely in the cask, etc.

Theodore Wolf, another one of the appellants, swears that he drank of the wine at appellee's place of business at Chicago, after he had received it, and it was of the kind and quality ordered by him.

Opposed to the evidence of these witnesses is only the evidence of appellee, who swears that two or three days after he received the wine he went to Wisconsin, and remained there from one to two weeks.    Before his return his employees drew into bottles, and sold, ten, fifteen, or perhaps twenty gallons of the wine, part of which was, afterwards, returned as being sour; and he then examined the balance and found it " vinegar sour."

If we shall assume that the evidence of appellee was directly contradictory to that given on behalf of appellants it would seem, by every test usually applied to the weighing of evidence, the preponderance is clearly and decidedly with appellants. None of the witnesses are impeached.    Appellants are no more interested in the result of the suit than is appellee.    They have equal means of knowing the truth of that to which they testify, and there is no less apparent sincerity and candor in their statements than in his.    The wine-cooper has no interest in the result of the suit, and there is no reason why his evidence should be biased or unfair, other than such presumption of influence, if any, as may arise from the relation of employer and employee.    If, where all are equally entitled to credit, and have equal opportunity of knowing that to which they testify to be

true, three does not constitute a clear preponderance over one, it would be difficult to determine what does constitute a preponderance of evidence.

But it will be observed, by reference to the evidence in the record, that there is not, on this point, necessarily, a contradiction between the witnesses.

The evidence on behalf of appellants relates to the condition of the wine at and shortly subsequent to the time of shipment. But appellee did not examine the wine for a number of days afterwards. Several days elapsed after its receipt before he went to Wisconsin. His stay there is not very definitely given. It was from one to two weeks, so that the whole time which may have elapsed after the wine was received, and before he examined it, may have been near three weeks. He kept a restaurant, and had a kitchen in his cellar. The wine was also stored in the cellar, with one room only between it and the kitchen; and the doors between the wine room and the kitchen, he admits, were open from eight to twelve times a day, for the purpose of passing from one room to the other, as the necessities of the business he conducted required. He also admits that if these doors had remained open long at a time the hot air from the kitchen would have had an injurious effect on the wine, tending to make it sour. He also says, wine of this kind will become sour in five or six weeks if not kept in full casks, and, during his absence in Wisconsin, his employees had drawn from the cask a quantity which he concedes may have amounted to twenty gallons, and which was not replaced in the cask.

Here, then, are causes which, all operating together, may have soured the wine between the time of its receipt and the time of appellee's examination of it, and this view is the most charitable, as it is perfectly consistent with the truthfulness of all the witnesses.

The court, at the instance of appellee, instructed the jury as follows:

1. If the jury believe, from the evidence, that the wine sold

and delivered by the plaintiffs to defendant was materially different from the wine ordered by defendant, and deficient in the quality and value which it should have possessed so as to conform to said order, then the defendant had a right to rescind and avoid the sale thereof, and to return the said wine without unreasonable delay.

2. The jury are further instructed, that if the evidence shows that the wine was materially defective, and that the defendant sold a part of said wine before the discovery of the deficiency, and could not therefore return the whole, he had still the right to rescind the sale and return the balance within a reasonable time, and he will be liable for the contract price only of what he had thus sold, provided it appears from the evidence that he offered to return the part unsold within a reasonable time after such discovery.

3. The jury are also instructed, that if they believe, from the evidence, that the defendant informed the plaintiffs of the deficiency of the wine, and offered to return the same within a reasonable time, at the time when one of the plaintiffs came to defendant's place of business in Chicago, soon after the discovery of the deficiency, and then and there requested the plaintiffs to take the wine away, and the plaintiffs refused and neglected to take the wine away and suffered the same to remain in the custody or possession of defendant, and the same was afterwards destroyed by the great fire, in defendant's possession, the plaintiffs must bear the loss so far as that portion of the wine so offered by the defendant to be returned to the plaintiffs is concerned.

The evidence of appellee, as before observed, shows that he made no effort to determine whether the wine corresponded with that ordered, until some time after its arrival, and after some twenty gallons of it had been drawn off and sold. He made no offer to return the wine sold, nor did he promptly advise appellants of its objectionable quality after he discovered it, but even then he waited some three weeks until the member

of the firm to whom he had given the order came around, and then, for the first time, notified him that the wine was sour, and offered to return what he had not sold. This is appellee's version, but even in this he is directly contradicted by Wolf, the person to whom he claims to have given the notice, and made the offer to return. Wolf's evidence is that no offer to return was made; that the wine was good; and that appellee promised to pay the bill in monthly installments of fifteen dol lars each month.

On appellee's own evidence, however, the law is against him, and the instructions ought not to have been given without modification. The doctrine repeatedly announced by this court is, that a party cannot affirm a contract in part, and rescind it as to the residue. If he rescinds he must do so *in toto.* He must put the opposite party in as good a condition as he was in before the sale, by a return of the property purchased, unless it is entirely worthless. *Buchenau* v. *Horney,* 12 Ill. 338; *Bowen* v. *Schuler,* 41 ib. 193; *Ryan* v. *Brant,* 42 ib. 78; *King* v. *Mason,* ib. 223.

And, where a vendee has a right to object that goods delivered are different in quality from those he purchased, he must do so within a reasonable time, and before exercising acts of ownership over them. If, before objecting to their quality, he exercises any act of ownership over them, as, by selling a part, etc., he cannot afterwards repudiate the contract, so as to wholly defeat the vendor's claim for the price. 1 Chitty on Cont. (11th Am. Ed. 651); Story on Sales, § 427.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*