CLARENCE H. STACKPOLE

*v.*

FRANK O. SCHMUCKER *et al.*

*Opinion filed February 21, 1907.*

1. APPEALS AND ERRORS—*when permitting amendment to answer must be upheld.* Permitting a defendant in chancery to amend his answer upon motion supported by affidavits will be upheld on appeal, where the affidavits are not incorporated in the record, having been lost from the files and no effort made to supply them.

2. FRAUD—*party electing to abide by contract cannot afterwards rescind it.* One who has relied entirely upon the material representations of the other party in making a contract for an exchange of properties may, upon learning such representations were false, elect to rescind the contract; but if he treats the property as his own after full knowledge of the fraud, makes a contract for its care and does not attempt to rescind or make restitution until he begins a suit for that purpose several months later, during the pendency of which he receives the income from the land, he must be regarded as having ratified the contract.

APPEAL from the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge presiding.

HENRY S. DIXON, and TRUSDELL & SMITH, for appellant.

J. W. WATTS, and E. E. WINGERT, for appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On January 24, 1903, the appellant, then a resident of Dixon, Lee county, Illinois, sold to Frank O. Schmucker and Samuel W. Schmucker, appellees, a parcel of real estate and a stock of merchandise in that place, and received in payment therefor a contract for a deed to twenty-one acres of land, a fruit farm, near the village of Rumsey, in Yolo county, Californa. On July 8, 1903, in the circuit court of

Lee county, appellant filed his bill to rescind the transaction, alleging that he had never seen the California property prior to the consummation of the trade, and that in the transaction he relied upon certain representations made to him by Frank O. Schmucker in reference to the location, condition and value of the California realty, and that said representations were false, in that by those representations it was made to appear that the value of said realty, and the income therefrom for the two preceding years, were much greater than they actually were, the improvements on said realty more extensive and of greater value than they really were, and the location of the property much more desirable than it in fact was. It further appeared from the bill that appellant, shortly after the transaction was closed, went to California, discovered the falsity of the statements relied upon, and upon his return from California rescinded the sale and tendered a return of what he had received, which tender was refused. The bill offers restitution to appellees of the property received by appellant and prays for rescission and accounting and general relief.

The original answer admits the transaction but denies all allegations tending to show fraud, denies tender and avers that tender would have been refused had it been made. Replication was filed, and at the September term, 1903, the cause was referred to the master to take proofs and report same with his findings. The evidence taken before the master tended to show that appellant, after he acquired knowledge of the fraud, ratified the transaction. At the conclusion of the taking of the evidence on the part of appellees they gave the appellant notice that they would ask leave to amend the answer to conform to the evidence.

The master found the issues for appellant, and reported that he refused to consider the defense of *laches* and ratification because not set up in the answer. The appellees filed objections to the report, which were overruled, and later filed exceptions in the circuit court. When the cause came

on to be heard on these exceptions the appellees moved for leave to amend their answer. The court permitted the amendment, and the answer was so amended as to interpose as a defense the fact that the appellant had ratified the exchange of property after being fully advised of the falsity of the alleged false representations. The cause was then again referred to the master to take and report proofs and findings, which he did, reporting in favor of the appellant so far as the charge of fraudulent representations with reliance thereon was concerned, but finding that appellant, with full knowledge of the fraud practiced upon him, had ratified the transaction, and recommended that the bill be dismissed for want of equity. Appellant objected to the finding on the question of ratification. This objection was overruled, and the master's second report was filed in the circuit court at the January term, 1905. Appellant excepted in the circuit court to the master's report on the question last mentioned, and upon a hearing this exception was overruled and a decree entered at that term dismissing the bill for want of equity. Appellees did not object or except to the master's second report. The cause comes to this court by appeal.

It is first urged that the court erred in permitting the appellees to amend their answer and set up the defense of ratification. It appears that in support of the motion for leave to amend their answer appellees filed certain affidavits. According to the certificate of the clerk of the circuit court the transcript filed herein is not a complete transcript of the record for the reason that these affidavits are not included, and both parties, by their arguments, say that they were lost from the files. In the absence of these affidavits we will not hold that the circuit court abused its discretion in permitting the amendment to the answer.

In March following the transaction in question appellant went from Dixon, Illinois, where the trade was made, to Rumsey, California. The land for which he had traded is located near that place. He remained there three days, saw

the land, and acquired such information as could be obtained in reference to its value, the income to be derived therefrom, and its location and condition. While there, after acquainting himself with the situation, he made a written contract with one Harrington "to act as my agent for the care and disposal of the fruit on my ranch, (known as the Schmucker or contract No. 206 of the Capay Valley Land Company.) Said Geo. S. Harrington to dispose of in any manner as his judgment may best dictate, either on the trees, partially or as a whole, green or dry. Said Harrington to make a true statement of such disposal, and after expense of such work and disposal is deducted the net proceeds are to be remitted to C. H. Stackpole at any address he may give, said remittance to be made as soon as all fruit and nuts are disposed of and returns received." Appellant later, and while still at Rumsey, wrote a letter to his wife, which he himself introduced in evidence upon the taking of testimony in this cause before the master, in which he stated that he would get some money off of the place some time in August; that he had made arrangements with Mr. Harrington to take exclusive control for that season; that there was no value to property there and that he would not spend a dollar on the place but would try to keep up interest and taxes only; that he could not sell it at any price, but hoped to trade it when he got home. A few days later he returned to Dixon, and, in talking of the California property with various of his neighbors, said to Joseph J. Dauntler that he was perfectly satisfied with the trade; to John E. Grove, that in the transaction he had skinned Schmucker clean out of his boots; that he, appellant, had got the best of him in every particular; that he, appellant, considered that he had made $3000 in the trade, and by putting a little work on the property it would be worth $200 an acre more than he paid for it; to a certain Mr. Clark, that he thought he had made the best trade of his life; to A. G. Gaul, that he was perfectly satisfied with the trade; to Josiah L. Gray, that he found

the California property just as it was represented, but the surroundings were such that he wouldn't live there.

No evidence was offered tending to show that appellant made any attempt to rescind, or declared his purpose of rescinding, the contract prior to the filing of the bill, and there was no evidence that the appellant had made any tender or offer of restitution except such as was made by the bill, and the evidence discloses that he received the income from the land in California which accrued pending the litigation.

It is next contended that the acts of appellant in entering into the contract with Harrington and apparently electing to treat the property as his own after discovering the fraud do not amount to ratification, for the reason that they do not give rise to an estoppel nor amount to a subsequent contract entered into with appellees by which appellant bound himself to abide the original transaction. We think this position untenable. When appellant discovered the fraud that had been practiced upon him he was entitled to a reasonable time in which to determine whether he should ratify the contract, and during that time he might very properly take any steps that were necessary to preserve the property which had been transferred to him, but if he elected not to rescind the contract and treated the property as his own, he could not thereafter change his purpose and have the contract set aside, even though his act in electing to treat the property as his own may not have been such as would constitute a technical estoppel or amount to a new contract with appellees. When he discovered that the representations upon which he had relied were false, and ascertained precisely what the value, condition and location of the California property were, his right was exactly the same as it was just before the original transaction was finally closed. He could then take or reject the fruit farm, as he saw fit. If he elected to take it, the situation then, so far as a rescission in equity is concerned, became the same as though he had entered into the original contract with full knowledge of

the falsity of the representations made to him by Frank O. Schmucker. This view finds support in the following authorities: *Wolf* v. *Dietzsch,* 75 Ill. 205; *Perry* v. *Pearson,* 135 id. 218; *Greenwood* v. *Fenn,* 136 id. 146; *Day* v. *Ft. Scott Investment Co.* 153 id. 293; *Sutter* v. *Rose,* 169 id. 66; *Naugle* v. *Yerkes,* 187 id. 358; *Follett* v. *Brown,* 188 id. 244.

We think it fair to presume from the contract with Harrington, that appellant ratified the transaction with the Schmuckers. The letter written by appellant to his wife, and the statements made by him, upon his return from California, to various persons above mentioned, are important as tending to show that this conclusion is the correct one.

The appellant contends, however, that his act in entering into this contract with Harrington should be regarded merely as an attempt to preserve the property and assure the realization of some income therefrom for the benefit of whomsoever should prove the owner thereof, and not as evidence that he regarded the property as his own. We do not coincide with this reasoning. Several months would elapse before there could be any income from the property in any event, and then only from fruit and nuts which might thereafter be produced by the trees upon the farm, and no immediate action was necessary in order to insure that income. There was therefore no necessity or occasion for the employment of Harrington except upon the theory that the contract made with the Schmuckers was to stand. With full knowledge of the fraud practiced upon him appellant elected to treat, and did treat, the property for which he had traded as his own. His right to have the original contract set aside was thereby ended.

The decree of the circuit court will be affirmed.

*Decree affirmed.*