(No. 15630.—Appellate Court reversed; circuit court modified and affirmed.)

SAMUEL MOSBARGER, Plaintiff in Error, *vs.* GEORGE W. BROWN *et al.* Defendants in Error.

*Opinion filed October 28, 1924.*

1. FRAUD—*when right to rescind contract for fraud is waived.* Where a party desires to rescind a contract upon the ground of mistake or fraud, he must, upon discovery of the facts, at once announce his purpose and adhere to it, and if he be silent and continue to treat property purchased under the contract as his own, he will be held to have waived the objection and will be as conclusively bound as if the mistake or fraud had not occurred.

2. SAME—*fraud must be proved by clear and convincing evidence.* Fraud will not be presumed but must be proved by such clear and convincing evidence that the mind is well satisfied that the charge is true.

3. MORTGAGES—*when mortgagee's right to foreclose is not precluded by fraud.* A mortgagee who has loaned money to the mortgagor at his request, to enable him to make a payment on a purchase of land, will not be deprived of his right to foreclose by reason of the fact that the vendors defrauded the mortgagor, where there is no evidence that the mortgagee, although he acted as agent in the making of the sale, had any knowledge of the fraud or participated therein and where the loan was made after the mortgagor had complete knowledge of the facts.

HEARD, J., took no part.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Piatt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

GEORGE B. GILLESPIE, (JAMES L. HICKS, GEORGE M. GILLESPIE, and THOMAS E. GILLESPIE, of counsel,) for plaintiff in error.

E. J. HAWBAKER, and T. J. KASTEL, for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Samuel Mosbarger, the plaintiff in error, filed a bill in the circuit court of Piatt county against George W. Brown and Mary E. Brown, his wife, the defendants in error, to foreclose a mortgage on their farm in that county. The mortgage secured the payment of a note made by defendants in error, dated October 2, 1920, for $7000, payable to the order of Mosbarger and due in one year after its date, with interest at seven per cent per annum. The bill was answered, and the defenses relied upon were, in substance, fraud in procuring the execution of the note and mortgage and the mental incapacity of the mortgagors. In the circuit court the cause was referred to a master in chancery, who reported in favor of Mosbarger and recommended a decree of foreclosure. Objections and exceptions to the master's report were overruled and such a decree was entered. On appeal to the Appellate Court the decree was reversed and the cause remanded, with directions to dismiss the bill for want of equity. The cause is here by writ of *certiorari*.

George W. Brown was about sixty-five years of age at the time of the hearing. He came to Piatt county over forty years ago and purchased a farm of approximately 40 acres, which he occupied during all the ensuing years. About nine years after he acquired the farm he was married. In 1919 the farm was free from incumbrance and Brown had outstanding on notes from various borrowers about $2000. Brown and his wife had been acquainted with

Mosbarger upwards of thirty-five years, and during nearly half that period Brown, Mrs. Brown and Mosbarger had been members of the same church. Brown was uneducated and without business experience except such as he had acquired in the management of his farm. He had looked at land in Missouri and elsewhere but had not on any such occasion purchased any land. In 1919 Mosbarger acted as the agent for the Meek Land Company, which dealt in land in the State of Missouri. He invited Brown to go to Missouri to see some land he had for sale. Prior to calling on Brown, Mosbarger had made two trips to Missouri with prospective purchasers from the vicinity of Atwood, where the defendants in error lived. In the sale of land Mosbarger acted in conjunction with Basil J. Meek, H. C. Middleton, B. S. Parker, and possibly others. Brown accompanied Mosbarger to Missouri, and on January 6, 1920, entered into a written contract with W. T. Green for the purchase by Brown of a 200-acre farm in that State for $35,000, payable $2000 in cash, $8000 on March 1, 1920, and the balance of $25,000 on March 1, 1925. The contract provided that the last installment should bear interest at six per cent per annum, payable annually, and that it should be evidenced by notes and their payment secured by a trust deed on the land sold.

The evidence relating to the circumstances surrounding the execution of the contract is somewhat in conflict. Brown testified that Mosbarger exhibited to him a sample of the soil taken from the land in Missouri and that he would obtain for him an 80-acre farm for about $175 an acre, equal in value to Illinois land for which $400 per acre was paid; that he informed Mosbarger on the trip to Missouri that he (Brown) knew nothing of Missouri land and that he would have to rely upon Mosbarger in making a trade or purchase; that Mosbarger represented to him that land in the vicinity of Carrollton, Missouri, was very good, equal in value, fertility and productiveness to the black land

in Illinois with which Brown was familiar, and that the profits derived from the land offered would discharge the interest and principal payments as they matured under the terms proposed; that Mosbarger agreed to assume the responsibility for the contract into which Brown might enter and that the men with whom he dealt were men of integrity. Brown further testified that when in Missouri in January, 1920, he and Mosbarger were driven from Carrollton by Middleton and Parker through a 200-acre farm then valued at $175 per acre; that he shucked some corn on the farm which indicated that the land would yield sixty bushels per acre; that he looked over the farm and found it good, tillable land; that on their return to Carrollton they viewed an 80-acre tract in which Mosbarger appeared to be interested and for which he was willing to pay $175 per acre but not $200, the price asked; that they returned to the hotel at Carrollton, where they found Meek, who inquired of Brown whether he did not wish to purchase the 200 acres he had inspected; that he replied he liked the land but could not raise enough money to purchase it; that Meek and Parker, in Mosbarger's presence, said that they would see that he obtained sufficient money by a sale of his land in Illinois; that Mosbarger stated he could get $16,000 for it and would not charge a commission; that the contract for the sale of the 200 acres in Missouri was then drawn and signed; that while it required the payment of $8000 on March 1, 1920, Middleton informed him that he might have six months within which to obtain that sum; that about a month after the execution of the contract Middleton and Mosbarger came to him and stated that they could not raise the $8000 due the first of March, and to enable them to do it suggested that he convey to them his farm in Piatt county; that he declined to make such conveyance, and they then requested him to execute a mortgage, and that shortly afterwards, while suffering from illness, he and his wife executed a note, dated February 19, 1920, for $8000,

payable to the order of B. S. Parker, trustee, seven months from its date, with interest at seven per cent, and secured its payment by a trust deed which conveyed to the same Parker, as trustee, Brown's farm in Piatt county.

The record shows that the land described in the contract of sale to Brown was conveyed by Edward H. Musson and wife to B. J. Meek by warranty deed dated March 4, 1920; that Meek and wife on the next day conveyed the land by warranty deed to W. T. Green and Alice Green, who by warranty deed dated March 6, 1920, conveyed it to G. W. Brown and Mary E. Brown, the defendants in error. The last mentioned conveyance was made subject to a first mortgage to an insurance company, dated March 4, 1920, for $9000, and to a trust deed to B. J. Meek, which secured the payment of notes aggregating $16,000.

Brown testified that after the deed from W. T. and Alice Green to himself and wife had been delivered he discovered that the land described in the contract and conveyed by the deed was not the land which he had inspected in January, 1920; that the land conveyed was low, only partially tillable, untillable in wet seasons, difficult to rent, often traded, and several miles distant from and less valuable than the land he had seen.

The note for $8000, secured by the trust deed to Parker, became due on September 19, 1920. It had been indorsed both by Parker and Middleton and the holder had sent it to a bank at Bement, Illinois, for collection, with instructions to waive the interest. Brown was unable to pay it and applied to bankers and others in the vicinity of his home for a loan to discharge this incumbrance, but failed. Finally he applied to Mosbarger, who agreed to assist him. Accordingly Brown and his wife executed a note, dated October 2, 1920, for $7000, payable to the order of Mosbarger one year after its date, with interest at seven per cent, and secured its payment by a mortgage to Mosbarger on the farm in Piatt county. On the note and mortgage

Mosbarger advanced on October 4, 1920, by check, $6420, which was applied on the note for $8000. The balance of $1580 Brown had obtained from various other sources, and on the same day paid it in complete discharge of the $8000 note and the trust deed to Parker which secured its payment. In this suit the foreclosure of the mortgage for $7000 from Brown and wife to Mosbarger is sought.

In his behalf Mosbarger testified that when the proposed sale of land was under discussion Brown told Middleton that he was not afraid to go into debt to purchase land; that when Brown saw the 200-acre farm he said he would buy it; that he (Mosbarger) asked Middleton and Parker whether they did not have an 80-acre farm which they could show Brown, but that Brown replied he wanted 200, and not 80, acres; that upon their return to the hotel at Carrollton, Meek asked Brown how much money he could raise, and Brown answered $30,000; that Meek then drew the contract, and when it was ready for execution Brown said, "Maybe I had better wait until I sell this 40 before I sign this;" that Meek told him he need not sell his farm, because the rent from the Missouri land would be $5000; that all that he (Mosbarger) had said to Brown was that he had received $3000 from his farm of 160 acres during the preceding year, and that such a sum would pay the interest and part of the principal due from Brown on the terms proposed; that Brown did not have the money to make the initial payment of $2000 on the contract but that he had notes which he said could be collected in a short time; that Meek gave him two or three weeks to do so, which Brown agreed was sufficient time; that shortly after their return home Brown said that his bank had refused to discount the notes he held; that he (Mosbarger) then accompanied Brown to one Kent, who either bought his notes or took them as collateral and gave him the required $2000; that when the installment of $8000 became due, on March 1, 1920, Middleton called on Brown concerning it; that Brown in-

formed him that he did not have that sum and could not get it; that Middleton offered him $14,000, and all that could be obtained above that figure, for his Illinois farm, of which $8000 would be applied on the Missouri land contract and the excess retained by Brown, but that he refused the offer; that on the next day Middleton informed Brown that he would furnish the money on a mortgage on his farm for seven months; that it was so adjusted, and accordingly the note and trust deed to Parker were executed; that he (Mosbarger) did not arrange for the execution by Brown and wife of this note and trust deed nor was he present when they were executed and never possessed them; that when the note for $8000 became due Brown came to him for assistance; that in behalf of Brown he first inquired of one Bircher, who offered a loan of $6000 upon the payment of $600 commission, which he told Brown was excessive; that he then applied to a person named Frye, who was willing to lend him $6000, deducting $300 for commission,—a proposition which Brown accepted but which was not consummated because of a defect which Frye claimed there was in the title; that Brown was unable to raise the additional $2000 which was necessary; that Brown then offered him, (Mosbarger,) if he would take up the note for $8000 and the trust deed to Parker, to pay him the interest accrued thereon, which the holder was willing to waive for prompt payment of the principal; that he declined to do so unless his commission on the sale of the Missouri land to Brown, still due, was paid; that discussions followed, in which Brown said he would pay the commission, and Mosbarger promised to lend Brown $7000 by mortgage on his Illinois farm upon condition that he raise elsewhere the balance necessary to discharge the existing incumbrance of $8000; that Brown accepted his proposition and with his wife executed the note and mortgage for $7000 to Mosbarger, and that after delays, owing to Brown's inability to obtain the balance promptly, the note

for $8000 secured by the trust deed to Parker was paid. Mosbarger further testified that Brown, after his return from Missouri, told him that the land "is better than I expected it;" that after a second trip to that State Brown told him he had about 80 acres in corn, had collected the rent, re-let the farm and paid his taxes; that after the mortgage for $7000 was made Brown exhibited his deed to him, and that upon reading it he told Brown to send it back because it contained reservations for a drainage ditch and silt basin not specified in the contract; that he did not know until November, 1921, when he and his wife, with Mrs. Brown, went to see the farm, that Brown had not received a deed to the land he had inspected; that before he brought suit to foreclose the mortgage Brown told him that he expected to obtain the money to pay it from Meek and that he intended to allow Mosbarger to foreclose and keep him out of his money for fifteen months. Brown, in rebuttal, denied that he had ever said that the land was better than he expected, or that he had received any corn from it, or that he had agreed to pay Mosbarger the accrued interest on the note for $8000 if he would make the new loan.

The testimony shows that the farm in Missouri conveyed to Brown was worth from $100 to $125 per acre. Brown's farm in Piatt county, Illinois, was worth, according to the testimony adduced by Mosbarger, from $150 to $175 per acre, and from the testimony offered in behalf of Brown, from $250 to $275 per acre.

On the issue of Brown's mental incapacity, a local bank president, who had been acquainted with him for twenty-five years, testified that while Brown might understand small transactions, yet he believed him incapable of grasping a transaction as large as his purchase of the land in Missouri. An attending physician considered Brown incompetent to conduct large affairs or to transact any business that required sound judgment. A neighbor did not believe that he could understandingly transact such business as his

land purchase. A lumber dealer who had given Brown a check which he lost and failed to request another, and who found that he knew nothing about measuring timber, did not think that Brown was capable of conducting the ordinary affairs of life or competent to give notes and mortgages. A real estate agent did not consider Brown a very shrewd trader, and Mrs. Brown was permitted to testify that in her opinion her husband was incompetent to transact the business he undertook when he signed the contract. On the contrary, three merchants, a farmer, a banker, a dealer in hogs, and other witnesses, testified that Brown was capable of transacting business. It was also shown that he was a deacon of his church, a trustee of a cemetery association and a stockholder of a local elevator company.

Brown exhibited his deed to the Missouri land to Mosbarger either in the spring or summer of 1920. When Mosbarger read the deed he found that it contained reservations for a drainage ditch and a right of way for a silt basin. Mosbarger then informed Brown that no such reservations had been incorporated in the contract, nor was there any silt basin on the farm he had purchased, and advised him to send the deed back. Brown not only failed to act upon the suggestion of Mosbarger but accepted the deed without any protest. He visited the farm at least twice, and after he had actual knowledge that land inferior in quality and of less value had been substituted, he refused to act against the parties who had perpetrated the fraud but remained silent and exercised acts of ownership over the property conveyed to him. Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own he will be held to have waived the objection and will be as conclusively bound by the contract as if the mistake or fraud had not occurred. *Day v. Fort Scott Investment Co.* 153 Ill. 293; *Follett v. Brown,* 188

id. 244; *Burwash* v. *Ballou,* 230 id. 34; *Grymes* v. *Sanders,* 93 U. S. 55.

There is no direct testimony to the effect that Mosbarger knew or had any information that one farm was to be shown to Brown and another conveyed to him. Mosbarger testified that he first learned of the substitution in November, 1921, when he and his wife and Mrs. Brown went to Missouri to see the farm which Brown had inspected. The note and mortgage in question here were given on October 2, 1920. Prior to their execution no complaint was made by Brown to Mosbarger that he had been defrauded. Brown sought and received Mosbarger's assistance in raising money to make the initial payment of $2000. Later, in September, 1920, when the note for $8000, secured by the trust deed to Parker on his Illinois farm, became due, and after he had sought to borrow elsewhere the money to pay it, he again applied to Mosbarger for assistance, and the latter provided $6420 out of $8000 necessary to discharge the incumbrance on his Illinois farm. Mosbarger did not induce Brown to borrow the money from him. After Brown had endeavored to obtain it elsewhere and failed he came to Mosbarger. At that time, so far as the record shows, Mosbarger had no knowledge that the farm conveyed to Brown was different from the one he had seen. There is no testimony that Mosbarger in any way participated in effecting or had anything to do with the substitution. The giving of the mortgage to Mosbarger was not shown to be an act in any plan or scheme to deprive Brown of his Illinois farm. When the loan was made Brown had complete knowledge of the facts, yet he made no protest or complaint to Mosbarger. When Brown failed or refused to take any steps to obtain relief against the guilty parties but continued to treat the farm conveyed to him as if he was satisfied with it and then borrowed money from Mosbarger to pay an existing incumbrance, it is difficult to see how Mosbarger can properly be charged

with fraud in making the loan to Brown. (*Stackpole* v. *Schmucker,* 225 Ill. 502; *Follett* v. *Brown, supra.*) Brown was not strong and self-reliant, but we believe he possessed sufficient capacity to understand the business in which he was engaged. Fraud will not be presumed, but must be proved by such clear and convincing evidence that the mind is well satisfied that the charge is true. (*Carter* v. *Carter,* 283 Ill. 324.) Nor should fraud be based upon conjecture. (*McKennan* v. *Mickelberry,* 242 Ill. 117.) To refuse to allow a foreclosure of the mortgage here involved would deprive the mortgagee of money advanced by him at the mortgagor's request at a time when there was no charge of fraud nor any reason to suspect that such a charge would ever be made.

Mosbarger advanced $6420 on the note and mortgage. The commission which the Missouri agents failed to pay Mosbarger and the interest which had accrued on the note for $8000 secured by the trust deed to Parker, which interest the holder waived, constituted the difference of $580 between the sum of $6420 so advanced and the principal of the note. It would be inequitable to charge Brown with the commission claimed by Mosbarger, and Brown denies that he agreed to pay Mosbarger the interest charge. The evidence discloses no sufficient basis for either of these items and both should be disallowed.

The judgment of the Appellate Court will be reversed and the decree of the circuit court will be modified by reducing the principal sum due to $6420, with interest thereon from October 2, 1920, and as so modified that decree will in all other respects be affirmed.

> *Judgment of Appellate Court reversed.*
> *Decree of circuit court modified and affirmed.*

Mr. JUSTICE HEARD took no part in this decision.