Calogero Oscar Rubinelli, Appellee, v. Envoy Building
Corporation et al., Defendants.
Appeal of Clyde F. Frazier et al., Appellants.

Gen. Nos. 35,216, 35,217.

Opinion filed December 29, 1931.

Bippus, Rose, Burt & Reeve, for appellants; Robert C. Pierce, of counsel.

Shulman, Shulman & Abrams and Gallagher & McDevitt, for appellee; Vincent G. Gallagher and Meyer Abrams, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

The two appeals, here consolidated for hearing, are from a decree of the superior court of Cook county, entered March 19, 1931, which as to said appellants is contrary to the findings and recommendations of a master in chancery to whom the cause was generally referred to take proofs and report his conclusions.

Complainant's original bill was filed on November 20, 1928. Demurrers thereto were sustained, as were demurrers to an amended bill. The cause was tried upon complainant's second amended bill, filed March 7, 1929, by which he sought the *rescission* of a sale to him by the defendant, Envoy Building Corporation, of its apartment hotel property located at No. 5633 Kenmore avenue, Chicago (written contract therefor executed on May 24, 1928, consummated on June 19, 1928), as well as the cancellation of a two-years' lease of a certain bungalow apartment in the building (made by the Envoy Corporation to the defendant, John E. Edmunds, one of its directors, prior to the consumma-

tion of said sale) and the cancellation of a certain written contract (made about June 19, 1928, between complainant and Ruth K. Frazier, wife of Clyde F. Frazier) as to her management of the hotel building for him for the period of one year, unless in the meantime he should sell the property, or in the alternative for a decree for damages against defendants; all upon the grounds of an alleged conspiracy between certain defendants to defraud complainant in his said purchase and of the alleged false and fraudulent representations of Clyde F. Frazier, a salesman employed by the two Branigars, as to the value of the hotel property and the extent of the occupancy thereof by tenants and the amounts of rentals received, upon which representations complainant, as alleged, solely relied in making said purchase.

During the hearing before the master it appeared that on June 1, 1929, complainant, pursuant to an exchange contract, conveyed the hotel property to a woman named Cara and, hence, *was unable to reconvey* the same to the defendant, Envoy Corporation. During the progress of the hearing it also appeared that on November 21, 1929, the defendant, John E. Edmunds, died, and on December 6, 1929, the court ordered that his widow, Christine Edmunds, and his married daughter, Fern Edna Wallace (his only heirs-at-law and next of kin) be made parties defendant to the bill without prejudice to the proceedings before the master. On January 25, 1930, they filed their answer, denying that complainant was entitled to any relief.

The theory of defense of appellants (Frazier and the two Branigars), *before* they had knowledge that complainant had conveyed the property to Cara, as appears from their respective answers (filed July 2, 1929) and their positions taken before the master, was in substance that the Branigars were the real estate brokers for the Envoy Corporation for the selling of

the property on commission, that the details of the negotiations resulting in the sale were conducted solely by Frazier, their salesman; that neither they nor Frazier entered into any conspiracy as charged; that Frazier merely communicated to complainant in good faith information, concerning the value of the property and the rentals realized therefrom, which he had received from the seller and which he believed to be true, and advised complainant of the source of his information; that the information when so given was true; that complainant did not solely rely upon said information or representations but through an agent or attorney made an independent investigation; that neither the Branigars nor Frazier had any knowledge of the existence of the Edmunds lease at the time of the execution of the contract of May 24, 1928; that Frazier did not learn of it until a day or two before the contract was consummated on June 19, 1928; that immediately prior thereto Frazier informed complainant of the lease, but the latter with knowledge of it consummated the purchase of the property; that the contract with Mrs. Frazier, as to the management of the hotel, was made at complainant's request about the time he consummated the purchase of the property and was not part of any scheme to defraud him as charged; that the Branigars had nothing whatever to do with the contract; and that appellants were in no way liable to complainant for any damages claimed to be suffered by him in making the purchase. *After* appellants had knowledge of complainant's conveyance of the property to Cara they made the further defense before the master and before the court that there were no grounds for *equitable* relief against any of them, because (1) a *rescission* of the sale of the hotel property could not be decreed as complainant had voluntarily put it out of his power to reconvey the property to the Envoy Corporation and the parties could not be placed *in*

*statu quo,* and (2) complainant's claim for damages, on account of the alleged conspiracy and the alleged false and fraudulent representations of Frazier as to the value of the property and its rental, was a matter for determination solely by a court of law. On it being urged in substance by complainant that, as his bill sought equitable relief for the cancellation of the Edmunds lease and of Mrs. Frazier's management contract with complainant, the court in addition to granting this relief could also take jurisdiction of the entire subject matter and adjudicate the question as to whether appellants were liable in damages to complainant, appellants urged in reply that no grounds whatever for equitable relief to complainant existed, because (a) he was no longer interested in having the Edmunds lease canceled as he had conveyed the hotel property to Cara, and (b) the management contract by its terms was already at an end, complainant having made said conveyance to Cara. It was provided in said contract, introduced in evidence by complainant, that "if you (Rubinelli) sell said hotel at any time before my (Mrs. Frazier) year's period expires, this contract is to then be at an end without further liability on your part or my part."

Among the many findings in the master's report (dated January 19, 1931) are the following:

"99. That the defendants, Branigar Bros., were agents of the Envoy Building Corporation in the sale of the premises and the information upon which the representations of their salesman, Clyde F. Frazier, was based was given them by the representatives of said building corporation and was not known by them or their said salesman, Frazier, to be false, and said Branigar Bros. and said Frazier are not liable in damages to the complainant, and the second amended bill should be dismissed as to them.

"100. That the conspiracy charged has not been proven. . . .

"109. That complainant is entitled to a decree for damages against the *building corporation* for $8,000 on account of the purchase of said building and for a decree in the sum of $13,225.71 on account of loss of rents, making a total of $21,225.71."

In the decree the court ordered that "the exceptions of the several defendants to the master's report be overruled and that complainant's exceptions be sustained, and that the master's report, *except* as it is modified herein by findings which are different from the master's findings and conclusions, is in all other respects approved and confirmed as modified." The court made findings substantially contrary to the master's findings, Nos. 99 and 100 as above set forth, and further found, *inter alia:*

That prior to May 24, 1928, the Envoy Building Corporation was an Illinois corporation and the owner in fee of the property; that Charles L. Wallace and John E. Edmunds were its principal stockholders and directors, and the managers of its business; that Wallace died in October, 1928, prior to the commencement of the present action, leaving him surviving his widow, Fern Edna Wallace, a daughter of Edmunds; that during the hearing before the master Edmunds died, leaving him surviving his widow, Christine Edmunds and said Fern Edna Wallace, as his only heirs-at-law; that the Branigars are real estate brokers, doing business in Chicago as Branigar Brothers, and that Frazier has since 1927 been a real estate salesman, employed by them as sales manager; that by the contract of May 24, 1928, complainant agreed to purchase the property of said corporation for the total price of $370,000, of which he paid down as earnest money the sum of $10,000; that the building was 9 stories in height and had 72 apartments and 2 bungalow-apartments on the roof; that the property was incumbered by a first mortgage of $280,000 and a junior mortgage of $11,200, both of which the buyer agreed to assume; that the

building had been furnished with suitable furniture at a cost of $47,000, upon which there remained unpaid on May 24, 1928, an indebtedness of $36,139.62, secured by chattel mortgage, which indebtedness and mortgage the buyer also agreed to assume; that the balance of the purchase price was to be paid by the buyer (complainant) when the deal was consummated and he received a deed; and that said deal was consummated on June 18, 1928, and possession given to complainant.

"12. That when the contract was signed the deposit of $10,000 by complainant as earnest money was delivered to Branigar Bros., . . . and that upon the closing of the deal on June 18, 1928, $6,250 of said $10,000 was paid over to Branigar Bros., as commissions for negotiating the deal and acting as brokers in connection therewith.

"14. That three days after the closing of the deal, on June 21, 1928, Frazier as manager delivered to complainant a copy of the rents' schedule, which was in use prior to and at the date of said contract of May 24, 1928, and that said schedule showed, among other things, the bungalow being rented at $300 per month, being the same bungalow which was occupied by Edmunds on an alleged lease for two years at $85 per month, and stated that the total rental was $79,050.

"15. That the representations of Frazier, and of Edmunds as officer and director of the Building Corporation, with reference to the annual income of the premises being not less than $79,000, and as to the monthly and annual expenses, and that the premises were 100 per cent rented, were false and known to be false when made, and were made with the object and intent of inducing complainant to purchase the premises, and to cheat and defraud him out of the money he then invested in the premises; . . .'. that Branigar Bros. received out of the money, so obtained as a result of the fraud so practiced by Frazier, Edmunds

and the Building Corporation, under the guise of brokers' commissions for effecting said fraudulent sale, the sum of $6,250, . . . which said sum thus received is legally and equitably that of complainant and ought to be refunded to him.

"16. That about the time complainant was induced to purchase the property, Christine Edmunds, wife of John E. Edmunds, was placed in charge of the premises to fill up vacancies, and that she did fill up the various apartments in the hotel with personal friends who moved out upon the consummation of said deal, by means whereof complainant was greatly deceived.

"17. That the premises never yielded a rental of $79,000 per year and that the income did not exceed $60,000 per year; that while it was represented to complainant that the monthly rental at the date of the execution of the contract was $6,200, the actual rental for June, 1928, was $5,484.85, and there was no material change in the income of the premises thereafter; and that complainant was also deceived in the annual expenses, which were greatly in excess of what the representations were. . . .

"18. That the representations as to the income of the premises, the expenses and net income thereof and the occupancy thereof were material representations of existing facts, which were known to the defendants last aforesaid to be false when made and were made for the purpose of inducing complainant to so act that they would receive benefits; that complainant relied on these representations and believed them to be true, was deceived thereby and sustained damages by reason thereof; and that the defendants hereinafter named should compensate complainant for the damages sustained by him in the amounts hereinafter stated.

"19. That complainant sustained damages in the amount of $8,000 in the *value* of the property, because of the fraudulent representations as to the annual in-

come therefrom, and also sustained damages in the sum of $13,225.71, *in actual loss of rent* between the amount represented and the amount received, making a total of complainant's losses, as a result of the aforesaid fraudulent representations in the sum of $21,225.71; and that he is entitled to recover the same from the defendants, *Clyde F. Frazier,* Envoy Building Corporation and the estate of John E. Edmunds, deceased.

"22. That Branigar Bros., having received the $6,250, as commissions, out of the $10,000 earnest money deposited by complainant, have *by that* ratified and confirmed the fraudulent acts and representations of their sales-manager, Frazier, by reason whereof they should not retain *any spoils of their fraud* and should return and refund to complainant the $6,250, so wrongfully received by them.

"23. That said Christine Edmunds received out of complainant's money, paid over to the Building Corporation, the sum of $10,000 without any consideration; and that the $10,000 received by her are corporate funds which should be returned by her for the benefit of complainant to apply on the loss sustained by him and on the judgment to be herein entered against the defendants."

And the court in the decree ordered and adjudged:

That complainant recover from defendants, Envoy Building Corporation *and Clyde F. Frazier,* the sum of $21,225.71, plus interest thereon at the rate of 5 per cent from January 19, 1931, the date of the master's report; that execution issue, etc.; that complainant recover from Frank W. and Harvey W. Branigar, trading as Branigar Bros., the sum of $6,250, and that execution issue, etc.; that complainant recover from Christine Edmunds the sum of $10,000, and that execution issue, etc.; that upon any payments being made by said Branigar Bros. or Christine Edmunds on said respective judgments against them, "such payments

may be credited in reduction of the judgment lien entered against the Envoy Building Corporation and Clyde F. Frazier;'' that Christine Edmunds and Fern Edna Wallace ''shall account herein for all of said John E. Edmunds' estate coming into their possession, control or knowledge,'' and that said Envoy Building Corporation, its officers, directors and stockholders, shall also account herein to complainant ''for any of its funds in its or their possession or control, or heretofore coming into its or their possession, control or knowledge,'' so that the property and assets of said Building Corporation, and of the estate of said Edmunds ''may be applied towards the payment of said money decree herein entered against them,'' etc.

After considering the pleadings and the evidence in the present case, and reviewing the briefs and arguments of opposing counsel, we are of the opinion that the court erred in entering the decree or respective judgments against Clyde F. Frazier and the two Branigars. We think that the master was right in holding in substance that none of them was liable in this proceeding to complainant and in recommending that complainant's said second amended bill be dismissed as to them. By the bill complainant sought a rescission of his purchase of the hotel property upon the grounds of an alleged conspiracy to defraud him and of the alleged fraudulent representations of Frazier, the agent of or salesman of Branigar Bros., brokers in the deal. When, as appeared on the hearing before the master, complainant affirmed the said purchase by selling the property to a third party on June 1, 1929 (nearly a year after he had taken possession of it), we think that he forfeited his right, if ever he had such, to have said purchase rescinded by a court of equity. The parties could not be placed *in statu quo*. By his bill he further sought money damages, because of said alleged conspiracy and said alleged fraudulent repre-

sentations, and also the cancellation of the Edmunds' lease of the bungalow apartment in the building and the cancellation of the one-year's contract he had made with Mrs. Frazier for her management of the building for him. After complainant's sale of the property to said third person he was no longer interested in having the Edmunds' lease canceled, and by the sale Mrs. Frazier's contract with him, according to its terms, was *ipso facto* canceled. After said sale complainant had no grounds for relief in a court of equity. All he then had was a claim for damages on account of said alleged conspiracy and said alleged fraudulent representations, and this claim was cognizable only in a court of law, where appellants, if they so elected, could have the issues tried before a jury. We think these holdings are sustained by many adjudicated cases of the Supreme Court of this State, among which may be mentioned: *Fisher v. Burks,* 285 Ill. 290, 294, 295 (citing *Smith v. Brittenham,* 109 Ill. 540, 551; *Farson v. Fogg,* 205 Ill. 326, 344, 345); *O'Donnell v. Henley,* 327 Ill. 406, 411; *Stackpole v. Schmucker,* 225 Ill. 502, 506, 507; *Bell v. Anderson,* 292 Ill. 605, 613; *Toledo, St. L. & N. O. R. Co. v. St. Louis & Ohio R. Co.,* 208 Ill. 623, 632; *Brauer v. Laughlin,* 235 Ill. 265, 273, 274.

And we are further of the opinion that the evidence was insufficient under the law to establish that appellant Frazier was guilty of the fraudulent representations as charged. In *Gillespie v. Fulton Oil & Gas Co.,* 236 Ill. 188, 198, it is said: "A misrepresentation which will warrant a court of equity in setting aside a contract must contain the following elements: First, its form must be a statement of fact; second it must be made for the purpose of inducing the other party to act; third, it must be untrue; fourth, the party making the statement must know or believe it to be untrue; fifth, the person to whom it is made must believe in and rely upon the truth of the statement; sixth, the

statement must be material.'' As we view the present transcript it appears by a clear preponderance of the evidence that the representations of Frazier to complainant, as to the value of the hotel property, its occupancy by tenants and the rentals received, were made in good faith and upon information received from the Building Corporation, which he believed to be true, and, further, that complainant did not solely rely upon said representations, but made investigations concerning them through an agent before signing the contract of May 24, 1928. And we agree with the master in his holding that no conspiracy to defraud complainant, as charged, was proven by the evidence.

And we think that the portion of the decree, which provides for complainant's recovery from the two Branigars of the commission of $6,250, received by them out of complainant's first payment of $10,000, is erroneous. The theory of the decree as to them is, apparently, that, although they were not guilty of any fraudulent representations or fraudulent acts, still, by receiving said sum as commissions, they thereby ratified and confirmed the fraudulent acts and representations of their sales manager, Frazier, and are in equity bound to return said amount to complainant as ''spoils of their fraud.'' It clearly appearing that there is no equity in complainant's bill as against Frazier, there is also no equity therein as against the Branigars.

Our conclusion is that as to the appellants, Clyde F. Frazier and Frank W. and Harvey W. Branigar, the decree appealed from should be reversed and the cause remanded with directions to dismiss complainant's second amended bill as to them and each of them. Such will be the order.

*Reversed and remanded with directions.*
KERNER and SCANLAN, JJ., concur.